_____

No. 96-1411
_____

United States of America,          *
                                    *
          Appellant,                *
                                    * Appeal from the United States
     v.                             * District Court for the
                                    * District of North Dakota.
Lawrence D. LaMorie;                *
Patricia L. LaMorie,                *
                                    *
          Appellees.                *


_____

               Submitted:  July 26, 1996

                   Filed:  November 6, 1996
_____

Before BOWMAN, BEAM, and LOKEN, Circuit Judges.
_____

BOWMAN, Circuit Judge.


     The United States appeals from two orders of the District Court
suppressing evidence against defendants Lawrence D. and Patricia L.
LaMorie.  Because we conclude that the warrant under which the LaMories'
trailer home was searched was supported by probable cause, we reverse and
remand.


                              **I.**


     On April 13, 1995, the post office and convenience store in Arena,
North Dakota, were burglarized and burned to the ground.  Federal and state
law enforcement officials began investigations, and on May 3, 1995, Deputy
Steven Hall of the Burleigh County Sheriff's Department applied for a
warrant to search the LaMories' trailer home in Wing, North Dakota.

Deputy Hall appeared before Burleigh County District Judge Benny Graff in connection with the warrant application and testified that soon after the Arena burglary, postal money orders stolen from the Arena post office began to appear in the Bismarck area. Store employees gave physical descriptions of the persons cashing the money orders and indicated that they used New York identification. Another deputy stationed in Wing had information that two families of New Yorkers were in the process of moving to Wing, and their physical descriptions matched the descriptions given by the store clerks in the Bismarck area. A federal postal inspector had identified five suspects in the post office burglary and the cashing of the stolen money orders: Lawrence and Patricia LaMorie, Jerry and Vicki Allen, and Jeffrey Royce. All five suspects were from New York and had recently arrived in North Dakota. The Allens and Royce were the first to move into the trailer home, which Patricia LaMorie had recently inherited, and the LaMories later joined them. Royce had been positively identified passing a stolen money order in Wing on April 22.

On May 2, the day before Deputy Hall applied for the warrant, officers in West Fargo arrested the Allens for possession of a controlled substance. When they were arrested, the Allens had in their possession money orders stolen from the Arena post office. In separate interviews with the West Fargo police, the Allens implicated themselves in the Arena burglary, the burning of the post office, and the ongoing scheme to pass the stolen money orders. The Allens also implicated Royce, but they apparently did not implicate the LaMories in the burglary at that time. On the morning of May 3, Deputy Hall interviewed Vicki Allen by telephone, and she told him that property stolen from the Arena post office had been transported to the trailer in Wing where the Allens and the LaMories were living. Allen indicated that the money order validation machine from the Arena post office had been set up in the kitchen of the trailer, where the burglars validated approximately $26,000 in blank money orders. Stamps, blank money

orders, and costume jewelry from the convenience store also had been taken to the trailer, according to Allen. Deputy Hall testified that Allen told him that the LaMories were out of town but were expected to return to Wing by the weekend.[1]

Hall also noted that Allen and other investigators on the case had indicated that Lawrence LaMorie had a lengthy criminal record, was in possession of several firearms, and was extremely dangerous. After hearing this evidence, Judge Graff granted the search warrant for the LaMories' trailer. Because of Lawrence LaMorie's criminal history and the evidence that he was dangerous, the judge granted a "no-knock" warrant in accordance with state law, meaning that the officers executing the warrant were not required to knock or announce their presence before entering the property.

Officers executed the warrant on May 4, discovering costume jewelry matching Vicki Allen's description but none of the other property she claimed would be in the trailer. In plain view, however, the officers discovered a semi-automatic rifle, a sawed-off shotgun, and ammunition. Lawrence LaMorie was indicted by a federal grand jury as a felon in possession of the firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1) (1994), and both LaMories were indicted for possession of the unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(c), (d) (1994).

Patricia LaMorie moved to suppress the firearms. A magistrate judge recommended suppression, finding that Deputy Hall presented no evidence of Vicki Allen's reliability or corroboration of the information provided by her. The Magistrate Judge also noted that

---

[1]At the suppression hearing, Deputy Hall testified about an additional conversation he had with Judge Graff concerning the credibility of Vicki Allen. Because this conversation was not reported in the transcript of the search warrant proceeding, and because it apparently took place after Judge Graff had signed the search warrant, the District Court declined to consider it. We will do the same.

Hall failed to disclose to Judge Graff that Allen was a convicted felon and concluded that her disclosures were too stale to support a finding of probable cause. Finally, the Magistrate Judge found that the warrant was so lacking in indicia of probable cause that the good-faith exception of United States v. Leon, 468 U.S. 897 (1984), did not apply.[2]

The District Court ordered the evidence suppressed, repeating the Magistrate Judge's reasons and adding a concern "that the purpose of the search was the weapons themselves, not any alleged 'fruits of a crime.'" Memorandum and Order at 3. Lawrence LaMorie then moved the court to suppress the weapons as evidence against him, and the District Court granted his motion.

We have jurisdiction over the government's appeal pursuant to 18 U.S.C. § 3731 (1994). "In reviewing the grant . . . of a motion to suppress evidence on Fourth Amendment grounds, we are bound by the district court's findings of fact . . . unless we believe on the basis of the record as a whole that the District Court clearly erred." United States v. Riedesel, 987 F.2d 1383, 1387 (8th Cir. 1993). We may reverse a suppression order not only if it rests on clearly erroneous findings of fact, but also "if the ruling reflects an erroneous view of the applicable law." Id. at 1388.

## II.

We consider first the District Court's suggestion that the search was unconstitutional because "the purpose of the search was the weapons themselves." Memorandum and Order at 3. The District Court continued:

---

[2]The Magistrate Judge also recommended, and the District Court ordered, the suppression of statements obtained by officers from Patricia LaMorie in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The government has not appealed this ruling.

> The moral is clear--if you want to search for weapons, say so and do so, and don't try to scam the court with vague references to "suspects" and stolen property. Assembling a small army of heavily armed law enforcement officers to look for a "crock, brown and tan in color, approximately 2 feet high" [one of the items on the warrant] looks inappropriate.

Id. at 3-4. The LaMories have pressed similar arguments on appeal. With due respect to the District Court, the fact that the officers may have been interested in looking for weapons in the LaMories' residence is irrelevant to the constitutional inquiry if the search warrant for the proceeds of the burglary was valid. Horton v. California, 496 U.S. 128, 138-40 (1990), explicitly rejected the notion that the Fourth Amendment requires the discovery of an object in plain view to be "inadvertent." As the Supreme Court said in Horton, if an officer "has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first." Id. at 139; cf. Whren v. United States, 116 S. Ct. 1769, 1774 (1996) (noting that the Court has repeatedly held that an ulterior motive does not make an otherwise legal search or seizure illegal). The only issue in this case, then, is whether the warrant for the fruits of the Arena burglary was valid.

## III.

The duty of the judge issuing a search warrant is to make a "practical, common-sense decision" whether, considering all the circumstances, a reasonable person would have reason to suspect that evidence would be discovered. Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause is a fair probability that contraband or evidence of a crime will be found in the location to be searched. See United States v. Robertson, 39 F.3d 891, 892 (8th Cir. 1994), cert. denied, 115 S. Ct. 1812 (1995). Our duty as a

reviewing court is to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge. Gates, 462 U.S. at 236, 238-39; United States v. Edmiston, 46 F.3d 786, 788 (8th Cir. 1995). We review the District Court's conclusion that probable cause did not exist for clear error. See United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990), cert. denied, 498 U.S. 1101 (1991).

We agree with the government that Judge Graff had a substantial basis for concluding that probable cause existed to search the trailer. Deputy Hall presented a detailed description of the various law enforcement authorities' investigations into the burglary, investigations that eventually focused on the Allens, the LaMories, and Royce. Vicki Allen, under arrest for another offense, reported that fruits of the burglary had been taken to the LaMories' trailer and that the LaMories were out of town. Jerry Allen corroborated the details of the burglary under separate questioning. Vicki Allen described to Deputy Hall particular items stolen from the post office that could be found in the trailer. Taken together, this information would give a reasonable person reason to suspect that the fruits of the burglary could be found in the trailer.

**A.**

We consider the LaMories' arguments in turn. First, they argue that Judge Graff had before him insufficient evidence of Vicki Allen's credibility and reliability. The credibility and reliability of a person providing information to the police are important factors to be considered in a determination of probable cause. See Gates, 462 U.S. at 230. They are not, however, "separate and independent requirements to be rigidly exacted in every case." Id. We emphasize that probable cause is to be determined under a totality-of-the-circumstances approach. See id.

at 238; see also Massachusetts v. Upton, 466 U.S. 727, 732 (1984) (per curiam). We have previously recognized that this standard permits, "for example, an informant's clear basis of knowledge [to] be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability." United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986).

It is clear in this case that Vicki Allen's basis of knowledge for the information she provided is well established: she admitted participating in the crimes. The LaMories fault Deputy Hall for not interviewing Allen in person to verify her credibility. Although personal contact with an informant can strengthen an officer's decision to rely on the information provided, see Robertson, 39 F.3d at 893, it is not invariably required, see Gates, 462 U.S. at 243-46 (finding probable cause based on information from anonymous letter); Upton, 466 U.S. at 733-34 (finding probable cause based on information from telephone call). The government also notes correctly that statements against the penal interest of an informant naturally carry considerable weight. See United States v. Harris, 403 U.S. 573, 583 (1971) (plurality opinion) ("Admissions of crime . . . carry their own indicia of credibility--sufficient at least to support a finding of probable cause to search."); Reivich, 793 F.2d at 959 ("The concept of statements against penal interest should not be interpreted narrowly and grudgingly . . . ."). The Magistrate Judge rejected the government's argument on this point below, concluding that Allen's statements were not necessarily against her penal interest because they could have helped her to obtain more lenient treatment from the police and prosecutors. This conclusion, however, is squarely foreclosed by the relevant case law: "That the informant may be . . . promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." Harris, 403 U.S. at 583-84; see also Reivich, 793 F.2d at 959. In the instant case, the risk for Allen was even greater than in Harris or

Reivich; she directed the police to the fruits of the burglary, evidence that would aid directly their case against her.

On the issue of reliability, the LaMories argue that the police did not attempt to corroborate Allen's information to verify that it was truthful. We note first that some of Vicki Allen's information was corroborated by the independent questioning of her husband. If some information from an informant is shown to be reliable because of corroboration, it is a permissible inference that other, uncorroborated information is also reliable. See Edmiston, 46 F.3d at 789. More importantly, this is not a case involving a confidential informant, an anonymous letter, or some other situation in which the potentially unreliable information first alerts law enforcement officials to illegal activity. In such situations, corroboration of the information by independent investigation is an important factor in the calculus of probable cause. See, e.g., Gates, 462 U.S. at 243-46 (anonymous letter evidencing no basis for knowledge); Draper v. United States, 358 U.S. 307, 312-13 (1959) (information from confidential informant evidencing no basis for knowledge); Robertson, 39 F.3d at 892-93 (information from concerned citizen who did not want to get involved); cf. United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991) (anonymous telephone call insufficiently corroborated to support probable cause). In the present case, on the other hand, officials were already aware of the crime and had been investigating it for some time. See United States v. Marihart, 472 F.2d 809, 814-15 & n.6 (8th Cir. 1972) (en banc). Indeed, the only information provided by Allen that did not merely confirm other information already possessed by Deputy Hall was the location of the items stolen from the post office. See Upton, 466 U.S. at 729-30.[3] It was, of course, impossible for Hall to "corroborate" the

_____

[3]In Upton, police had been looking for items taken in several home burglaries. An anonymous telephone caller, who later admitted to being Upton's ex-girlfriend, informed the police that she had seen the goods in a motor home behind Upton's house. An officer verified that the motor home was parked where the caller said it would be and then obtained a search warrant. The Supreme Court summarily reversed a state-court decision suppressing the evidence.

information that the stolen items were in the LaMories' trailer before seeking a search warrant; that was the very reason he needed the warrant. Where there is essentially nothing remaining for the police to corroborate, we will not insist on a hypertechnical application of the probable-cause standard or impose an impossible burden on investigators. See Upton, 466 U.S. at 732; Reivich, 793 F.2d at 960. We therefore conclude that the District Court clearly erred in ruling that Allen's credibility and reliability were insufficiently established in the search warrant proceeding.

**B.**

The District Court also concluded that the information provided by Allen was too stale to support a finding of probable cause. Probable cause must exist when a warrant is issued, not merely at some earlier time. See United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir.), cert. denied, 116 S. Ct. 193 (1995); United States v. Ellison, 793 F.2d 942, 947 (8th Cir.), cert. denied, 479 U.S. 937 (1986). Allen had last seen the stolen property in the trailer about two weeks before the search warrant proceeding. Because Royce had been seen in the Wing area and may have had access to the trailer to remove the stolen items, the Magistrate Judge concluded that a two-week period between sighting and warrant was too long.

We believe the District Court erred on this point.

> There is no bright-line test for determining when information is stale. Whether the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between

> the occurrence of the facts supplied and the issuance of the affidavit.  Time factors must be examined in the context of a specific case and the nature of the crime under investigation.

United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993) (citation omitted).  Royce's presence in the Wing area is at most a neutral factor in the totality of the circumstances of this case.  It is possible that Royce could have removed the stolen property from the trailer after Allen had seen it, but it is equally possible that the property remained in the trailer as Royce continued to use it as part of a continuing series of crimes (validating and passing stolen money orders).  Where continuing criminal activity is suspected, the passage of time is less significant.  See Ozar, 50 F.3d at 1446.  The other circumstances of the case--that much of the property was not subject to spoilage or use, that a large amount of money orders could not be cashed rapidly in a small town without attracting attention, and that the LaMories and Allens were apparently absent from the area--indicate that a gap of two weeks is not so significant as to render the warrant invalid.  See, e.g., United States v. Maxim, 55 F.3d 394, 397 (8th Cir.) (four-month-old information regarding illegal possession of firearms), cert. denied, 116 S. Ct. 265 (1995); Ellison, 793 F.2d at 947 (one-month-old information regarding illegal possession of firearms); United States v. Golay, 502 F.2d 182, 187 n.10 (8th Cir. 1974) (sixteen-day-old information regarding location of stolen diamonds); United States v. Chapman, 954 F.2d 1352, 1373 (7th Cir. 1992) (thirty-seven-day-old information regarding money from bank robbery, not easily spent under the circumstances).  Judge Graff concluded in light of all the evidence that "there is cause to believe that [the stolen items] are in the trailer home," Search Warrant Tr. at 6, and we believe he was correct in that determination.

**IV.**

The government also contends that the District Court incorrectly analyzed two issues raised by the LaMories under the doctrine of <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). Under <u>Franks</u>, a facially valid affidavit for a search warrant may be challenged if it contains deliberate or reckless misrepresentations. <u>See</u> <u>United States v. Gladney</u>, 48 F.3d 309, 313 (8th Cir. 1995). We apply a two-part test to allegations of omissions of fact in violation of <u>Franks</u>, requiring the defendant to show that the affiant omitted facts with the intent to make, or in reckless disregard of whether the omissions made, the affidavit misleading, and that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. <u>See</u> <u>id.</u> The first <u>Franks</u> claim, that the police intentionally failed to disclose that their true purpose was to search for weapons, is meritless for the reasons discussed in Part II of this opinion.

The second claim has little more substance. According to the LaMories, Deputy Hall intentionally or recklessly failed to disclose to Judge Graff that Vicki Allen was a convicted felon, which necessarily affected the judge's assessment of her credibility. We will assume that Deputy Hall was aware that Allen was a convicted felon, though the record suggests he was not. Nevertheless, we conclude that the omission was not material. Deputy Hall clearly disclosed to Judge Graff that Allen had confessed to participating in the burglary and torching of a post office, as well as a scheme to validate and cash stolen money orders. The judge could hardly have been under the impression that Allen was a model citizen. In light of this information and the evidence supporting Allen's credibility, we cannot agree with the District Court that the details of her criminal record would have had any effect on the search warrant proceeding. <u>See</u> <u>Ellison</u>, 793 F.2d at 947 (concluding that failure to mention that several

-11-

informants were in jail did not undermine existence of probable cause).

**V.**

Even if the warrant were not supported by probable cause, we would agree with the government that reversal would be required because of the good-faith exception of United States v. Leon, 468 U.S. 897 (1984). We review the application of the Leon exception de novo. See Riedesel, 987 F.2d at 1391.

In Leon, the Supreme Court recognized that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916. Accordingly, evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant "with an objectively reasonable reliance on the magistrate's determination of probable cause." Riedesel, 987 F.2d at 1391. There are four exceptions to this rule of good faith:

> (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

Id. (quoting Leon, 468 U.S. at 923). The Magistrate Judge concluded that the first and third exceptions applied. Our discussion of the Franks issues in Part IV and the probable cause issues in Part III are sufficient to demonstrate our disagreement with the District Court on these points. We therefore would reverse on the basis of Leon as well. See Gibson, 928 F.2d at

-12-

253-54 (applying <u>Leon</u> to warrant supported by uncorroborated information); <u>United States v. Rugh</u>, 968 F.2d 750, 753-54 (8th Cir. 1992) (applying <u>Leon</u> to warrant supported by stale information).

## VI.

The orders of the District Court suppressing evidence discovered pursuant to the search of the LaMories' trailer home are reversed, and the case is remanded to the District Court for further proceedings.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.