# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 96-2613

_____

United States of America,       *
                            *

      Appellee,         *
                       •  Appeal from the United
                                States
   v.                 *  District Court for the
                              •  District of Minnesota
James Arthur Taylor,       *
also known as Creature,      *
                       *

      Appellant.       *

_____

Submitted: December 10, 1996

Filed: July 10, 1997

_____

McMILLIAN, Circuit Judge.

    James Taylor appeals from a final judgment entered in the District Court[1] for the District of Minnesota upon a jury verdict finding him guilty of aiding and abetting distribution of cocaine base (also referred to as "crack cocaine") in violation of 21

---

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

U.S.C. § 841(a)(1),(b)(1)(A), and 18 U.S.C. § 2, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For reversal, Taylor argues that the district court erred in denying his motion to suppress certain evidence. For the reasons discussed below, we affirm the judgment of the district court.

## BACKGROUND

The following facts are based upon the evidence presented by the government at trial and at the suppression motion hearing. In May 1995, Minneapolis police officer David Hayhoe received information from a confidential informant that a person named "Creature" was selling drugs through a drug runner known as "Dominick." Officer Hayhoe had prior knowledge through an ongoing investigation that "Creature" was James Taylor. "Dominick" was later identified as William Riley. The informant agreed to make recorded telephone calls to Riley setting up a crack cocaine purchase from Taylor.

In the first telephone conversation, the informant told Riley that he wanted to purchase 2 ounces of crack cocaine, but Riley told him that he would have to call back because "James . . . uh . . . Creature" was out buying a new pager. In the second telephone conversation Riley contacted the informant to make arrangements for the sale of the crack cocaine. This second telephone conversation ended prematurely when Riley was mugged while using the pay phone. In the third telephone conversation, Riley contacted the informant again.

During the conversation, another voice could be heard in the background on Riley's end. Riley referred to the voice in the background as "Creature." During this conversation a meeting time and place were arranged for the sale of the crack.

The informant, after being searched by officers to insure that he did not have any drugs, drove to the meeting place where surveillance officers were already in place.

A car driven by Taylor soon arrived with Riley as a passenger. Riley got out of the car and got into the informant's car. Riley showed the crack cocaine to the informant, who then signaled the surveillance officers. The officers arrested both Taylor and Riley and seized 70 grams of crack cocaine from Riley.

After his arrest, Riley told police that the cocaine belonged to Taylor. Riley agreed to cooperate by taking the officers to Taylor's "stash house," where Riley claimed they had been just prior to the drug sale. Riley took the officers to a four-plex at 1829 25 1/2 Street East in Minneapolis. Riley identified Taylor's apartment as unit #4, located in the upper-right corner of the building. Riley told the officers that the only person inside the apartment was Yolanda Jackson, Taylor's girlfriend. The building had a locked security door and the officers did not attempt to enter. The building remained under surveillance while Officer Hayhoe obtained a search warrant for apartment #4.

Meanwhile, surveillance officers observed a car registered to Yolanda Jackson arrive at the building and a woman exit the car and enter the building. The officers knew from a prior report of a domestic incident that Jackson was Taylor's girlfriend. Shortly thereafter, Officer Hayhoe returned with a search warrant, which he had obtained from the state court judge. Later, Jackson exited the apartment building and began to drive away; the officers stopped her car and detained her while other officers executed the search warrant. The officers obtained Jackson's keys and used them to unlock the security door of the apartment

building as well as apartment #4.  The police discovered from the occupants of apartment #4 that Taylor and his girlfriend lived in apartment #3.  Officer Hayhoe then obtained a corrected search warrant for apartment #3.

In the meantime, officers inserted Jackson's keys in the lock of apartment #3 without actually entering the apartment.  Apparently, Jackson's keys fit the locks of both apartments #3 and #4, and this information was relayed to Officer Hayhoe.  Also

during this time interval, Jackson signed a consent form, consenting to a search of apartment #3. However, there was conflicting testimony at trial as to when the consent form was signed.

In obtaining the corrected search warrant, Officer Hayhoe told the state court judge that the police had stopped Jackson and used her keys to open apartment #4, the occupants of apartment #4 told the officers that Taylor and Jackson lived in apartment #3, and Jackson's keys fit in the locks of both apartments #3 and #4. The state court judge made some hand-written amendments to the warrant to specify apartment #3 as the place to be searched and added a reference to Jackson and her keys, but he failed to add that the occupants of apartment #4 had informed the police that Taylor and Jackson lived in apartment #3.

While searching apartment #3 pursuant to the corrected search warrant, the officers found 9 ounces of powder cocaine, baking soda supposedly used to "cook" crack cocaine, a gun in the hall closet, numerous documents bearing Taylor's name, and $18,350 in cash in a hidden compartment in a bureau in the bedroom. All of these items were referenced in Counts II, III, and IV of the indictment against Taylor. Taylor was indicted in Count I for aiding and abetting the distribution of cocaine base, Count II for possession with intent to distribute cocaine, Count III seeking forfeiture of $18,350 as drug related proceeds, and Count IV for being a felon in possession of a firearm.

Following his indictment, Taylor moved to suppress

the evidence obtained in the search of apartment #3 on the ground that the warrant was not supported by probable cause.  He argued that the good faith exception to the exclusionary rule did not apply because the information contained in the warrant was tainted by information illegally obtained when the police tried Jackson's key in the lock of apartment #3 before the corrected search warrant was issued.  The magistrate judge recommended denial of the

motion to suppress based on the <u>Leon</u> good faith exception,[2] and the district court adopted the recommendation.[3] <u>See</u> Brief for Appellant, Addendum at C1-C2 (Transcript of Mar. 5, 1996, Hearing of Pretrial Motions at 19-20). The magistrate judge found that Jackson was in custody at the time she signed the consent form and therefore the consent was invalid. <u>United States v. Taylor</u>, No. 4:95-CR-87 (Feb. 28, 1996) (report and recommendation) (hereinafter "slip op."). The magistrate judge also found that the officers did not search the apartment until Officer Hayhoe returned with the corrected search warrant. Slip op. at 12-13. The magistrate judge reasoned that because the officers relied in good faith on the search warrant and thereby on the state court judge's determination of probable cause, suppression of the seized evidence would be unwarranted. <u>Id.</u> at 9. The magistrate judge further stated that none of the four circumstances that negate the <u>Leon</u> good faith exception was present in this case. <u>Id.</u> at 12. Additionally, the magistrate judge reasoned that the <u>Leon</u> good faith exception applies to the trying of the key in the lock of apartment #3 because the officers were relying on the validity of the original search warrant.[4] <u>Id.</u> at 12. Taylor was convicted on Counts I, II, and IV. After these convictions Taylor stipulated to Count III, which was the forfeiture of the proceeds of drug

---

[2]<u>United States v. Leon</u>, 468 U.S. 897, 918-22 (1984).

[3]The Honorable Franklin L. Noel, Chief Magistrate Judge, the United States District Court for the District of Minnesota.

[4]The magistrate judge assumed for the purposes of analysis that the trying of the key in the lock constituted a search.

transactions. Thereafter, the district court sentenced Taylor to twenty years imprisonment. This appeal followed.

**DISCUSSION**

The good faith exception to the exclusionary rule of
evidence

Taylor's sole issue on appeal is whether the district
court erred in denying his motion to suppress evidence
obtained pursuant to the search of apartment #3. Taylor
argues that the search warrant for apartment #3 was not
supported by probable cause, the officers made
misrepresentations to the state court judge, and that the
officers' reliance on the warrant does not fall under the
good faith exception to the exclusionary rule because the
warrant was tainted by the information that Jackson's key
fit the lock of apartment #3.

Assuming, without deciding, that both search warrants
were invalid for lack of probable cause, we agree with
the district court that the Leon good faith exception
applies in this case. We review the application of the
good faith exception de novo. United States v. LaMorie,
100 F.3d 547, 555 (8th Cir. 1996). "In reviewing the
grant . . . of a motion to suppress evidence on Fourth
Amendment grounds, we are bound by the district court's
findings of fact . . . unless we believe on the basis of
the record as a whole that the District Court clearly
erred." Id. The deferential standard applied when
reviewing determinations of probable cause by the
District Court is "abuse of discretion." Ornelas v.
United States, 116 S. Ct. 1657, 1660-61 n.3 (1996); see,
e.g., United States v. Riedesel, 987 F.2d 1383, 1387 (8th
Cir. 1993) (citations omitted). "We may reverse the
district court's ultimate ruling on the suppression

motion, however, if the ruling reflects an erroneous view of the applicable law."  United States v. Riedesel, 987 F.2d at 1388; see also United States v. LaMorie, 100 F.3d at 552.

In United States v. Leon, 468 U.S. 897, 905 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant

that is ultimately found to be invalid.  The officer's reliance on the magistrate judge's probable cause determination must be objectively reasonable.  Id. at 922-23.  Four circumstances exist in which the Leon good faith exception does not apply and  suppression remains an appropriate remedy: (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."  Id. at 923 (citations omitted).

There is no evidence in the record that Officer Hayhoe made any misrepresentations to the issuing state court judge, nor did he make any statements in reckless disregard for the truth.  The only incorrect information given to the state court judge was that Taylor's apartment was unit #4 instead of unit #3.  At the time it was given Officer Hayhoe believed this information was correct.  The officers did not search Taylor's apartment (unit #3) until after a corrected search warrant had been obtained, even though they had obtained Jackson's written consent to search.  These precautions taken by the officers demonstrate their good faith in conducting the search of Taylor's apartment in compliance with the law. There is no evidence to suggest that any of the other three exceptions to the Leon good faith exception would apply to the search of Taylor's apartment.  Therefore,

even if a Fourth Amendment violation occurred, the <u>Leon</u> good faith exception applies to prevent the exclusion of evidence obtained from the search of Taylor's apartment pursuant to the corrected search warrant.

<u>Fruit of the poisonous tree doctrine</u>

Taylor argues that the good faith exception was negated in this case because the officers' successful attempt to use Jackson's key in the lock of apartment #3 constituted

an illegal search for Fourth Amendment purposes, and the fruit of that search, which was the information that Jackson's key fit the lock, was used to obtain the search warrant for apartment #3. Thus, Taylor argues that the corrected search warrant for apartment #3 was tainted and invalid because it was fruit of the poisonous tree. The Eighth Circuit has not decided whether trying a key in a lock constitutes a search for purposes of the Fourth Amendment. See United States v. Dickson, 58 F.3d 1258, 1264 (8th Cir.), superseded on other grounds, 64 F.3d 409 (8th Cir. 1995), cert. denied, 116 S. Ct. 747 (1996). The federal courts of appeals are split on this issue. See, e.g., United States v. Concepcion, 942 F.2d 1170, 1172 (7th Cir. 1991) (holding that although the owner of a lock has enough privacy interest in a keyhole to make the inspection of that lock a "search," the privacy interest is so small that no probable cause is needed to inspect it); United States v. Lyons, 898 F.2d 210, 212-13 (1st Cir.)(holding that the insertion of a key into a padlock was merely a means of identifying ownership rather than a "search"), cert. denied, 498 U.S. 920 (1990); United States v. DeBardeleben, 740 F.2d 440 (6th Cir.) (holding that the insertion of a key into a lock solely for the purpose of identifying ownership does not constitute a "search"), cert. denied, 469 U.S. 1028 (1984); United States v. Portillo-Reyes, 529 F.2d 844, 848 (9th Cir. 1975)(holding that the insertion of a key into the door of a car to see if it fit constituted the beginning of a search because there is a reasonable expectation of privacy), cert. denied, 429 U.S. 899

-14-

(1976).[5]

The officers tested Jackson's keys in the lock of unit #3 before the corrected search warrant was issued. Therefore, the corrected search warrant would not apply to the use of the key in the lock. Assuming, without deciding, that the testing of the key in the lock constitutes a search for purposes of the Fourth Amendment, the only fruit of that search was the knowledge that Jackson's key fit the locks of both unit #3 and

---

[5]But see United States v. Grandstaff, 813 F.2d 1353, 1358 n.5 (9th Cir.) (suggesting that the Portillo-Reyes case has been undermined by intervening decisions of the Supreme Court and the 9th Circuit), cert. denied, 484 U.S. 837 (1987).

unit #4.  Although that information was given to the state court judge and handwritten on the corrected warrant, that information was superfluous to support probable cause for the search of unit #3 because both the state court judge and the officers had information from the occupants of unit #4 that Jackson and Taylor lived in unit #3.  We therefore hold that the <u>Leon</u> good faith exception applies to prevent the exclusion of the evidence from apartment #3.

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.

A true copy

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.