**United States Court of Appeals**

FOR THE EIGHTH CIRCUIT

_____

No. 97-3488

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Paul Edward Humphrey, | * | |
| | * | |
| Defendant-Appellant. | * | |
| | * | |

_____

Submitted: January 13, 1998
Filed: March 30, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and KYLE,[1] District Judge.

_____

MURPHY, Circuit Judge.

Paul Humphrey pled guilty to possession of a firearm by an unlawful user of a controlled substance, 18 U.S.C. § 922(g)(3), possession of an unregistered firearm, 26 U.S.C. § 5661(d), and possession of marijuana, 21 U.S.C. § 844(a), conditioned on his

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

right to appeal the denial of his suppression motion by the district court[2]. He argues that evidence seized from his house should be suppressed because it resulted from a warrant that relied on stale evidence and lacked probable cause.  We affirm.

William and Nancy Mueller and Nancy's daughter, Sarah Powell, disappeared from their community of Tilley, Arkansas in early 1996.  On February 11 a Jeep and trailer belonging to William Mueller were found abandoned in rural Pope County.  Law enforcement attention focused on Paul Humphrey when Nancy's brother, David Branch, informed Sheriff Jay Winters on February 22 that Humphrey had the title documents for the Jeep and trailer and that Branch had previously seen those documents, unsigned, in the Mueller residence on February 2.  The next day Sheriff Winters asked Humphrey about the documents and he admitted having them and promised to produce them, but failed to do so until July 2.

Police investigation intensified after the bodies of the Muellers and Sarah Powell were found in the Illinois Bayou on June 28 with plastic bags taped over their heads and rocks attached to their bodies.  Detectives of the Russelville police department went to Humphrey's home to discuss the developments.  He met them at the door with a .45 pistol in the waist band of his pants and said he had been expecting them.  He was taken to the sheriff's office where he said that he had received the title documents in the mail after the Muellers had disappeared and would provide them to the sheriff the next day.  On July 2 Humphrey turned over the documents signed in William Mueller's name, but he did not produce any mailing envelope.  The sheriff's office sent the documents to a forensic examiner with known samples of William Mueller's handwriting.  On August 22 the examiner issued a report that stated the signatures on the title documents had been forged.

---

[2]The Honorable Stephan M. Reasoner, Chief Judge, United States District Judge for the Eastern District of Arkansas.

Six days after the forensic examiner reported her findings, police investigators obtained a warrant for Humphrey's home and the surrounding buildings to search for blood, duct tape, plastic bags, carpet and clothing fibers, firearms and precious metals believed to have been taken from the abandoned Jeep and trailer, and other items related to the deaths of the Muellers and Sarah Powell. During the search of Humphrey's house investigators found several plastic bags containing marijuana, marijuana seeds, partially smoked marijuana cigarettes, rolling papers, and other drug paraphernalia. They also found several dozen firearms, including one which was not registered.

Humphrey argues on appeal that the warrant which led to the seizure of the drugs and unregistered gun lacked probable cause because it relied on stale evidence and uncorroborated hearsay and that the evidence should therefore be suppressed. He contends that the length of time from February when the victims had disappeared and he had his first contact with authorities to the issuance of the search warrant on August 28 was so long that it was probable that the types of evidence sought would have been destroyed. We review the denial of a suppression motion for clear error. U.S. v. Taylor, 119 F.3d 625, 629 (8th Cir. 1997).

The search warrant was supported by the affidavit of Sgt. Aaron Duvall of the Pope County sheriff's office. Duvall's affidavit stated that David Branch had seen the title documents to the Jeep and trailer in the Mueller residence shortly before they disappeared and that the documents were then unsigned, that Humphrey had admitted having the documents but for months refused repeated requests to surrender them, and that handwriting analysis indicated that William Mueller's signatures on them had been forged. It also reported that the Jeep and trailer were empty when found, that the Muellers had been on their way to a gun sale when they disappeared and they normally would have been carrying guns, ammunition, and precious metals on such a trip, that fibers taken from the Muellers' residence and vehicle were consistent in color with those observed in Humphrey's vehicle and residence, and that Humphrey had

described the clothes worn by the Muellers when he last saw them and that description matched the clothes later found on their bodies. Included in the affidavit were statements attributed to an unnamed cooperating witness who said that she had seen the Muellers in a vehicle parked outside a bank in Russelville, Arkansas shortly after their Jeep had been found abandoned. She reported that she saw William between two men in the back seat and Nancy next to Humphrey who was in the driver's seat. The affidavit indicated that bank records corroborated Humphrey's presence in Russelville on that date.

A study of the affidavit indicates there was probable cause that evidence or contraband would be located at Humphrey's property. Illinois v. Gates, 103 S.Ct. 2317, 2332 (1983). The source and credibility of evidence in support of a warrant request is considered in the totality of the circumstances analysis, and a warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence. Id., at 2335. Humphrey had admitted having the title documents to the Mueller vehicle but delayed in turning them over, and the signatures on them turned out to have been forged. There was other evidence in the affidavit linking him to the Muellers, including his knowledge of the clothing they wore at the time of their death and the presence on his property of fibers similar to those from the Muellers'. The report of the cooperating witness had also been corroborated by bank records. The lapse of time between the initial suspicion of Humphrey and the issuance of the warrant is relevant to the existence of probable cause, but is not dispositive. U.S. v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995). An ongoing investigation continued from the time Humphrey first came under suspicion until the application for the warrant was made just days after the receipt of the forensic report indicating that the title documents held by Humphrey had been forged. It took time to gather enough evidence to obtain a warrant. The warrant sought evidence that was of a type that might still be on the premises, U.S. v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996); Maxim, 55 F.3d at 397, and the district court did not err in concluding that probable cause existed at the time it was issued. LaMorie, 100 F.3d at 554-55.

The district court also found that the investigating officers relied in good faith upon a warrant reasonably believed to be valid.  U.S. v. Leon, 104 S.Ct. 3405, 3420 (1984); LaMorie, 100 F.3d at 556.  Humphrey argues that the officers could not have reasonably believed the warrant was valid because they prepared the supporting affidavit and knew it lacked sufficient indicia of probable cause.  Humphrey has not pointed out any material misstatements or omissions in the supporting affidavit, however, and substantial evidence was presented to support the finding of probable cause.  U.S. v. Livesay, 983 F.2d 135, 138 (8th Cir. 1993).  In light of the amount and detail of evidence in the affidavit it was not unreasonable for the executing officers to rely on the warrant.  Leon, 104 S.Ct. at 3420; LaMorie, 100 F.3d at 556.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.