# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————

No. 03-2464

——————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jay Todd Hessman, | * | |
| | * | |
| Appellee. | * | |

——————

Submitted: December 16, 2003
Filed: June 1, 2004

——————

Before WOLLMAN, JOHN R. GIBSON, and RILEY, Circuit Judges.

——————

RILEY, Circuit Judge.

Jay Todd Hessman (Hessman) was arrested after law enforcement executed a search warrant at his home. Hessman moved to suppress the evidence seized and also the statements he later made to law enforcement. The district court granted the motion and suppressed the evidence and statements. The government appeals the suppression decision. We reverse.

## I.      BACKGROUND

In March 2000, a confidential informant (CI) called Deputy Todd Suhr (Deputy Suhr) of the Palo Alto County, Iowa, Sheriff's Department to report a chemical smell

and a lot of short-term traffic at Hessman's house. Deputy Suhr periodically surveilled the house from March through May 2000. On May 13, 2000, Hessman's neighbor reported a strong chemical odor coming from the Hessman house. Deputy Suhr and Deputy Kenley Zwiefel (Deputy Zwiefel) drove past the house and confirmed a strong odor of ether. The officers also confirmed a high volume of short-term traffic at the residence, and knew from experience this behavior was associated with drug trafficking. Deputy Suhr knew one person visiting the house had previously been involved in drugs, and he also knew Hessman had prior drug manufacturing convictions.

That night, Deputy Suhr prepared an application for a search warrant, setting forth the above information and his experience regarding the manufacture of methamphetamine. At 11:00 p.m., Deputy Suhr paged a state magistrate, who returned the page at 11:44 p.m. Deputy Suhr told the magistrate he sought a search warrant. The magistrate told Deputy Suhr he was in Des Moines, but Deputy Suhr could fax him the application and warrant. Deputy Suhr asked if he should find someone else to sign the warrant, but the magistrate declined. The magistrate called Deputy Suhr again at 11:46 p.m. to give Deputy Suhr the hotel's fax number. At 12:22 a.m. on May 14, 2000, Deputy Suhr called the magistrate at his hotel room, told the magistrate he was finished with the application, said he would be faxing it soon, and gave the magistrate a return fax number. Deputy Suhr faxed the application for a search warrant, with attached affidavit and a search warrant, to the magistrate at the hotel at 12:30 a.m. At 12:35 a.m., Deputy Suhr called the hotel to make sure the hotel received the fax. The magistrate signed the warrant and faxed it back to Deputy Suhr at 1:02 a.m. The district court found Deputy Suhr had not signed the application, and the magistrate did not place Deputy Suhr under oath or talk to Deputy Suhr about the facts supporting the application before signing the warrant and faxing it back to Deputy Suhr.

Deputy Suhr and other officers executed the warrant at approximately 3:20 a.m., seizing a methamphetamine lab and methamphetamine manufacturing equipment. When officers arrested Hessman (and his wife), an officer read Hessman his Miranda warnings without questioning Hessman. Later on May 14, Deputy Suhr personally met with the magistrate, at which time Deputy Suhr was placed under oath and signed the application. The search warrant and the application and affidavit were filed in state court on May 15.

Hessman was booked into the county jail early on May 14 by a non-uniformed female in a room with an open door. Hessman moved freely inside the booking room, no uniformed officers were present during most of the process, and only standard booking questions were asked. Hessman carried on a casual conversation with the female conducting the booking. Hessman was offered a telephone to call an attorney, but declined at that early hour. During the booking process, Hessman made several statements indicating his use of and involvement with methamphetamine. Hessman called methamphetamine his drug of choice, and berated society for its hypocritical choices as to which drugs are legal. Hessman noted a prejudice in society because those involved in his arrest would all have a drink later that day after busting him for "doing what I can to get . . . methamphetamine without going broke to get it." A state court suppressed the evidence seized and Hessman's admissions, because Deputy Suhr did not take an oath or affirmation or sign the search warrant application.

Hessman was later indicted in federal court. Hessman moved to suppress the fruits of the search and his statements during booking. The federal magistrate judge recommended the evidence be suppressed because (1) the application for a search warrant was unsigned and unsworn, and (2) Deputy Suhr's reliance on the warrant did not meet the good-faith requirements of United States v. Leon, 468 U.S. 897 (1984), even though probable cause clearly existed for the issuance of the warrant. The federal magistrate judge also recommended suppressing Hessman's statements as fruits of the illegal search and arrest. Adopting the magistrate judge's report and

recommendation, the district court granted Hessman's motion to suppress. The government appeals, arguing (1) the evidence seized at Hessman's house is admissible under the Leon good-faith exception to the warrant requirement, and (2) Hessman's statements are admissible because they were voluntary.

## II. DISCUSSION

### A. Standard of Review

When reviewing a suppression order, we review a district court's factual findings for clear error and review "its conclusion as to whether the search violated the Fourth Amendment" de novo. United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001). We review de novo the district court's application of the Leon good-faith exception. United States v. LaMorie, 100 F.3d 547, 555 (8th Cir. 1996).

### B. The Leon Good-Faith Exception

The district court concluded Deputy Suhr could not have reasonably relied on the search warrant because he was aware the warrant had not been sworn or attested when it was executed. The government argues Leon's good-faith exception to the exclusionary rule precludes suppression of the evidence seized because (1) Deputy Suhr's reliance on the warrant was in good faith; (2) the error was the magistrate's, not Deputy Suhr's; (3) it was objectively reasonable to rely on the warrant, because Deputy Suhr was neither reckless nor dishonest in obtaining it; and (4) the warrant was supported by probable cause. Conversely, Hessman contends evidence seized pursuant to a warrant based on an unsigned, unsworn affidavit and application does not fit within the Leon good-faith exception.

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see United States v. Ameling,

328 F.3d 443, 447 (8th Cir. 2003) (Fourth Amendment applies to states through the Fourteenth Amendment). When a search warrant is not supported by probable cause, the evidence obtained during the search is generally inadmissible, but an exception exists for evidence obtained by officers relying "in objective good faith on a search warrant." United States v. Koons, 300 F.3d 985, 990-91 (8th Cir. 2002) (citing Leon, 468 U.S. at 922). In Leon, the Supreme Court "created the good-faith exception to the exclusionary rule." United States v. Johnson, 78 F.3d 1258, 1261 (8th Cir. 1996) (citing Leon, 468 U.S. at 922). Under Leon's good-faith exception, the Fourth Amendment exclusionary rule is not to "be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." United States v. Taylor, 119 F.3d 625, 629 (8th Cir. 1997) (citing Leon, 468 U.S. at 905, 922). The Supreme Court in Leon explained the rationale behind the good-faith exception as follows:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

Leon, 468 U.S. at 921 (alteration in original) (citation omitted).

"The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. The Leon rule does not exclude evidence when an officer's reliance on a technically sufficient warrant is objectively reasonable. Id. at 922; United States v. Terry, 305 F.3d 818, 823 (8th Cir.

2002). The good-faith exception does not apply in four circumstances: (1) when the issuing judge is misled by information in the affidavit the affiant knows or should know is false; (2) when the issuing judge completely abandons his judicial role; (3) when the affidavit includes so little indicia of probable cause that official belief in its existence is entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. Leon, 468 U.S. at 923; LaMorie, 100 F.3d at 555.

The Leon Court noted that "[o]ne could argue that applying the exclusionary rule in cases where the police failed to demonstrate probable cause in the warrant application deters future inadequate presentations or 'magistrate shopping' and thus promotes the ends of the Fourth Amendment." Leon, 468 U.S. at 918. The Court also noted, "[s]uppressing evidence obtained pursuant to a technically defective warrant supported by probable cause also might encourage officers to scrutinize more closely the form of the warrant and to point out suspected judicial errors." Id. Finding these contentions "speculative," the Court concluded "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Id.

In a companion case to Leon, Massachusetts v. Sheppard, 468 U.S. 981 (1984), the Supreme Court applied the Leon exception to the fruits of a search conducted pursuant to a warrant that was inaccurate due to the issuing judge's failure to correct a clerical error. Id. at 988-91. The Court observed, "we refuse to rule that an officer is required to disbelieve a judge who has just advised him . . . that the warrant he possesses authorizes him to conduct the search he has requested." Id. at 989-90. "If an officer is required to accept at face value the judge's conclusion that a warrant form is invalid, there is little reason why he should be expected to disregard assurances that everything is all right[.]" Id. at 990.

We previously found <u>Leon</u> applicable even when a facially obvious error exists on a warrant. <u>United States v. Thomas</u>, 263 F.3d 805, 808-09 (8th Cir. 2001) (noting the address on the warrant was different from the address in the affidavit). In <u>Thomas</u>, we rejected the argument that, because the facial error was the officer's, the officer could not reasonably rely upon it. <u>Id.</u> We observed "this is not sufficient to change the fact that the issuing judicial officer bears the primary responsibility for ensuring the accuracy of the warrant as the final reviewing authority." <u>Id.</u> at 809.

Other circuits confronting similar situations have applied the <u>Leon</u> good-faith exception to the exclusionary rule. In <u>United States v. Richardson</u>, 943 F.2d 547, 548, 550-51 (5th Cir. 1991), the Fifth Circuit reversed the district court's decision to suppress where the agent had not signed the affidavit and the magistrate judge, in a telephone conversation, did not require an oath or affirmation of the facts in the affidavit. The court ruled the magistrate judge's failure to administer the oath was not a departure from his neutral and detached role, but was an inadvertent mistake. <u>Id.</u> at 550. Nor had the magistrate judge been misled by false information. <u>Id.</u> Also, the court observed the lower court's decision to suppress the evidence was not based on a finding the affidavit lacked probable cause or was facially deficient in some way. <u>Id.</u> Thus, the <u>Richardson</u> case did not fall within any of the four situations "to which the <u>Leon</u> Court envisioned the exclusionary rule would still apply." <u>Id.</u> The Fifth Circuit explained the exclusionary rule functions as a judicially created remedy devised to protect Fourth Amendment rights "through its deterrent effect, rather than a personal constitutional right of the party aggrieved." <u>Id.</u> at 550-51 (quoting <u>Leon</u>, 468 U.S. at 906). The exclusionary rule's deterrent purpose would not be served by penalizing the officer for the judge's mistake, because "[t]he rare occasion when a magistrate accidentally fails to administer an oath cannot be eliminated by suppressing the evidence in that situation." <u>Id.</u> at 551 (citing <u>Leon</u>, 468 U.S. at 906). The court also found it was unlikely police will recklessly or willfully try to evade the oath or affirmation requirement. <u>Id.</u> According to the Fifth Circuit, "suppressing the evidence seized in the case will add nothing to protect against an affiant who

misrepresents the facts to the magistrate, nor will it encourage officers to take their chances in submitting deliberately or recklessly false information, for they will expect to be sworn when preparing their warrant applications." Id.

Further, in United States v. Kelley, 140 F.3d 596, 604 (5th Cir. 1998), the Fifth Circuit rejected a "per se rule that an unsigned and undated warrant can never suffice," and concluded suppression would not serve a deterrent purpose. The court relied upon Sheppard and the Supreme Court's refusal to rule an officer must disbelieve a judge who has advised the officer, by word and action, that the warrant the officer possesses authorizes the search requested. Id. at 603 (citing Sheppard, 468 U.S. at 989-90). While noting its decision was not intended to undercut the importance of the Fourth Amendment requirements, the court held the good-faith exception applied to the case, because the "objective criteria" for a search warrant, probable cause, existed. Id.

Similarly, in United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988), the Second Circuit rejected a claim that a warrant was invalid because government agents applying for the warrant were not placed under oath or formally sworn. An Assistant United States Attorney (AUSA) recited over the telephone to the federal magistrate judge facts relayed by a Drug Enforcement Administration (DEA) agent, who was on the line and confirmed the facts were "truthful to the best of [his] knowledge and belief." Id. (alteration in original). The magistrate judge issued the warrant without placing either the AUSA or the DEA agent under oath. Id. Noting the magistrate judge's failure to administer an "oath was obviously an oversight," the court applied the good-faith exception and ruled "the agents' reliance on the facially valid warrant was clearly reasonable under the circumstances." Id.; see also United States v. Callwood, 66 F.3d 1110, 1113 (10th Cir. 1995) (ruling the exclusion of evidence is not "the appropriate remedy" for the issuing magistrate judge's failure to administer an oath to an officer, referring to Leon); United States v. Kurt, 986 F.2d 309, 311 (9th Cir. 1993) (applying the good-faith exception where a judge instructed a detective to

change an address on the warrant without administering an oath); <u>United States v. Moore</u>, 968 F.2d 216, 223 (2d Cir. 1992) (holding "the lack of an oath or affirmation by the presiding officer did not destroy the warrant's final validity," so <u>Leon</u> applies).

Persuaded by <u>Leon</u>, <u>Sheppard</u>, and the precedent from other circuits, we conclude the evidence against Hessman should not have been suppressed. If the Second, Fifth, Ninth, and Tenth Circuits would probably find the Hessman warrant valid, it is difficult to say Deputy Suhr's conduct in honoring the warrant was objectively unreasonable. The error in this case belonged to the issuing magistrate. Deputy Suhr did not attempt to avoid swearing a formal oath. Applying the exclusionary rule here would not serve a deterrent purpose, because "[t]he rare occasion when a magistrate accidently fails to administer an oath cannot be eliminated by suppressing the evidence in that situation." <u>Richardson</u>, 943 F.2d at 551.

Our court has said the failure to fill out completely a warrant application form is "more a clerical error than an indication of bad faith." <u>United States v. Curry</u>, 911 F.2d 72, 78 (8th Cir. 1990). The magistrate is the final reviewing official, who "must shoulder the ultimate responsibility for the clerical error in the warrant." <u>United States v. Berry</u>, 113 F.3d 121, 124 (8th Cir. 1997). Deputy Suhr is not expected to question the magistrate's judgment as to the warrant's technical sufficiency. <u>See United States v. Hyten</u>, 5 F.3d 1154, 1156 n.5 (8th Cir. 1993).

Deputy Suhr was in contact with the magistrate while the warrant was considered, and could have signed and sworn to the affidavit had the magistrate requested. <u>See id.</u> The district court did not find Deputy Suhr's non-compliance was intentional or that the defect was the result of bad faith. Instead, the district court adopted a type of per se rule that an unsigned, unsworn application for a search warrant could not qualify for consideration under the <u>Leon</u> good-faith exception. We disagree, and we reject imposing a per se rule. <u>See Kelley</u>, 140 F.3d at 604.

-9-

Hessman also fails to show any of the four exceptions to the <u>Leon</u> good-faith rule apply to this case. The first exception is inapplicable because no evidence in the record indicates Deputy Suhr misled the magistrate. <u>Leon</u>, 468 U.S. at 923. The second exception is inapplicable because the facts do not show the magistrate was not neutral and detached, or he wholly abandoned his judicial role, or he acted as a rubber stamp. <u>See</u> <u>id.</u> Similarly, the fourth exception does not apply because the warrant was not so facially deficient in failing to particularize the place to be searched or the things to be seized so that no officer could reasonably rely upon it. <u>Id.</u>

As to the third exception, applicable when a warrant application does not contain sufficient indicia of probable cause, <u>id.</u>, the federal magistrate judge in this case found the facts set forth in the application established probable cause. Hessman's counsel conceded as much at oral argument. Indeed, the odor of ether, when coupled with other facts, can establish probable cause. <u>United States v. Ryan</u>, 293 F.3d 1059, 1062 (8th Cir. 2002). We conclude sufficient probable cause existed to justify the officers' reliance on the search warrant. Deputy Suhr and Deputy Zwiefel confirmed reports of a strong smell of ether, noticed a large volume of short-term traffic at Hessman's residence, and knew from experience this behavior was associated with drug trafficking. Deputy Suhr knew one person visiting the house had been involved in drugs, and also knew about Hessman's prior convictions for drug possession and manufacturing. Deputy Suhr's affidavit was not "so lacking in probable cause as to render official belief in its existence entirely unreasonable." <u>See</u> <u>Leon</u>, 422 U.S. at 923 (citation omitted). Further, Deputy Suhr's good-faith reliance on the warrant was objectively reasonable because (1) the state magistrate had made a probable cause determination, (2) the affidavit provided specific information about the objects of the search, (3) the affiant, Deputy Suhr, helped execute the warrant, and (4) the warrant could have been made valid by the addition of Deputy Suhr's signature and administration of an oath. <u>See</u> <u>United States v. Shugart</u>, 117 F.3d 838, 845-46 (5th Cir. 1997).

### C.    Custodial Statements

The government claims Hessman's statements made following his arrest are admissible because probable cause to arrest him existed even without the evidence obtained during the search.  The government claims the taint from any alleged illegal search was purged by Hessman volunteering statements without questioning by authorities.  Hessman asserts his statements were the fruits of the illegal search and, due to their temporal proximity to the arrest, must be suppressed.  Hessman's argument is precluded by our application of the Leon good-faith exception to the exclusionary rule.  See United States v. Flores, 63 F.3d 1342, 1362-63 (5th Cir. 1995).  Because we hold the search was legally conducted pursuant to a warrant, there was no "poisonous tree" from which any poisonous fruit could fall.  Further, Hessman's statements were made after Hessman received Miranda warnings, and were expressed without any questioning or prompting by the police.  We conclude the statements should not have been suppressed.

## III.    CONCLUSION

We reverse the district court's grant of Hessman's motion to suppress and remand for further proceedings consistent with this opinion.

_____