**UNITED STATES of America,**
**Plaintiff,**

v.

**Shawn Demar JOHNSON, Defendant.**

**No. 4:07–cr–00043.**

United States District Court,
S.D. Iowa,
Central Division.

Aug. 27, 2007.

Nicholas Todd Drees, Federal Public Defenders Office, Des Moines, IA, for Defendant.

John S. Courter, United States Attorney, Des Moines, IA, for Plaintiff.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

ROBERT W. PRATT, Chief Judge.

### I. PROCEDURAL BACKGROUND

Before the Court is a Motion to Suppress Evidence filed by the Defendant, Shawn Demar Johnson, on June 28, 2007.[1]

---

1. On February 13, 2007, a Grand Jury, convened in the Southern District of Iowa, delivered a three-count Indictment, charging the Defendant with possession of "crack" cocaine base with intent to distribute, possession of firearms in furtherance of a drug trafficking crime, and being a felon in possession of firearms and ammunition, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* Clerk's No. 2. The Government also provided notice of its intent to seek forfeiture of the firearms and ammunition involved in the offenses upon conviction. *See id.*

Clerk's No. 31. The Government filed a response in opposition to the motion on July 11, 2007. Clerk's No. 35. A hearing on the motion was held on July 24, 2007,[2] at which the Court received the testimony of Officer James Allen Robinson.[3] Clerk's No. 39. The matter is fully submitted.

## II. FACTUAL BACKGROUND

Officer Robinson of the Knoxville Police Department and the Mid–Iowa Narcotics Enforcement task force works undercover on narcotics cases, primarily conducting undercover drug buys. After utilizing a confidential informant ("CI") to make three controlled drug buys from the Defendant, Shawn Demar Johnson, between August 24 and September 7, 2006, Officer Robinson applied for, and obtained, a search warrant for the Defendant's residence.[4] *See* Gov't Ex 1.

When applying for the search warrant, Officer Robinson typed out an affidavit asserting grounds for finding probable cause to issue the warrant. *See id.* He testifed at the hearing on this matter that, after speaking with an Assistant Polk County Attorney about the case and information he had provided in the typed statement, he added some hand-written additions to the typed statement that the Assistant Polk County Attorney thought were pertinent to the warrant application before submitting the application to a Judge. *See* Hr'g Tr. at 3–4. The Polk County District Court considered the search warrant application, and signed off on the issuance of the search warrant. *See* Gov't Ex. 1.

Officer Robinson's affidavit accompanying the search warrant application described three controlled drug buys from the Defendant. The first involved a buy at a predetermined location where the CI and her vehicle were first searched for contraband, and then given money to make the purchase from the Defendant. Officer Robinson followed and observed as the CI met with the Defendant at a McDonald's parking lot. The Defendant's vehicle type and license plate were noted. After the buy, Officer Robinson met with the CI and she turned over illegal narcotics she had purchased from the Defendant. Officer Robinson testified that this controlled buy took place on August 24, 2006, although the warrant affidavit erroneously refers to it occurring "[b]etween September 4th and September 9th" of 2006. *See* Hr'g Tr. at 10.

---

2. All citations to the Hearing Transcript refer to the Court's unedited Realtime Transcript.

3. Officer Robinson has been a police officer in Knoxville, Iowa for nine years. He originally was a member of the Johnson County Kansas Sheriff's Office, and was certified through the Kansas State Academy. He obtained Iowa certification through testing with the Iowa Law Enforcement Academy, before being hired by the Knoxville Police in January of 1998. He is currently an investigator assigned to the Mid–Iowa Narcotics Enforcement task force.

4. The same CI took part in all controlled buys at issue in this case. The CI also attempted to buy drugs from the Defendant on August 3, 2006, but was unsuccessful. Before the August 3, 2007 attempt, Officer Robinson met with the CI, wired her for sound, and searched her. She then drove to the Defendant's apartment building at 605 Forest Avenue and went inside, only to quickly return outside with a woman. The CI and the woman drove to a nearby QuickTrip. Upon meeting with Officer Robinson a few minutes later, the CI reported that the Defendant did not have any drugs to sell, but that she had paid him $80 toward an earlier drug debt. This attempted buy was not included in the information provided in the warrant application. Officer Robinson also testified that, because the attempted buy was unsuccessful, the audio tape of the August 3, 2006 events was recycled, meaning it was used in another case. *See* Hr'g Tr. at 6–7.

The second controlled buy described in the affidavit provided by Officer Robinson occurred "[b]etween August 24th and September 1st," and took place in a similar manner. Officer Robinson met with the CI at a predetermined location, searched her and her vehicle for the presence of illegal contraband, provided her with a predetermined amount of money for the buy, and followed the CI to the buy location. The affidavit indicates that the buy occurred at "605 Forest Ave. # 202." The CI was observed entering and exiting the apartment building by Officer Robinson, and she again turned over illegal narcotics she purchased from the Defendant to investigators at a predetermined location after the buy.[5] The affidavit further indicates that the CI told Officer Robinson that the Defendant had vehicles with Minnesota license plates. Officer Robinson testified that this buy took place on August 31, 2006. *See id.* at 11.

The third controlled drug buy referenced in the warrant affidavit refers to a transaction that occurred "[b]etween September 4th and September 9th." Officer Robinson again met with the CI at a predetermined location, searched her and her vehicle, gave her a predetermined amount of money, and followed her to the Defendant's apartment building. The CI was observed entering and exiting the apartment building by Officer Robinson and other investigators,[6] and she again turned over narcotics she had purchased from the Defendant to the investigators at a predetermined location after the buy. Officer Robinson testified that this third controlled buy took place on September 7, 2006. *See id.* at 12. On that same day, the search warrant was applied for by Officer Robinson, issued by the Polk County District Court, and executed by law enforcement officers.[7] *See* Gov't Ex. 1.

Attachment B to the Search Warrant Application was also filled out by Officer Robinson. Attachment B indicated the law enforcement officers' basis for using the CI and the reasons why the officers believed the CI should be deemed reliable by the Polk County District Court Judge examining the search warrant application. Officer Robinson checked the boxes on the form indicating that disclosure of the CI's identity would endanger her safety and that disclosure would impair her future usefulness to law enforcement officers. Officer Robinson also indicated on the form that the CI had provided reliable information in the past on four occasions, and that the past information helped supply the basis for one search warrant. *See id.*, Attach. B. He also indicated that the informant had not given false information in the past, and that the information sup-

---

5. It appears that the Defendant resides in one of several loft-style apartments on a single story above the street level businesses at the Forest Avenue location. *See* Def. Ex. D.

6. The warrant affidavit states that Officer Robinson checked the utility records for the apartment located at 605 Forest Ave. # 202 on September 1, 2006. The records listed Desiree Annette Kroger as the utility holder since July of 2005. The affidavit states that the CI informed Officer Robinson that Desiree Kroger was the live-in girlfriend of the Defendant.

7. During the execution of the search warrant, the Defendant made a statement to Officer Robinson. Officer Robinson had read the Defendant his *Miranda* rights, and the Defendant answered yes to the question of whether he would talk to Officer Robinson. The Defendant was then placed in handcuffs and taken to a bathroom and questioned by Officer Robinson and another Detective. Officer Robinson testified that the questioning occurred approximately twenty minutes after the search began. *See* Hr'g Tr. at 24. He also stated that the Defendant was not provided with a written *Miranda* waiver because Officer Robinson did not have one with him at that point. *See* Hr'g Tr. at 24.

plied by the informant in the investigation had been corroborated by law enforcement personnel. *See id.*

Officer Robinson, however, misunderstood this section of the form. He testified that no search warrant had actually been issued based on information provided by the CI because this was the first warrant application based on information she provided. *See* Hr'g Tr. at 21–22. He also testified that the four occasions in the past where the CI provided reliable information was in reference to the three successful, and the one unsuccessful, controlled drug buys in this case. *See id.* at 22. He further related that the statement that the informant has not given false information in the past did not refer to any event prior to the attempted controlled buy on August 3, 2006. *See id.*

Officer Robinson originally met the CI when he accompanied the Department of Human Services during a visit to the CI's residence in response to a complaint about drug use. During this visit, Officer Robinson located a "crack" cocaine pipe in the residence. He testified that he then recruited the CI to assist in some investigations by participating in controlled drug buys in exchange for not being charged with a simple misdemeanor for possession of drug paraphernalia. *See id.* at 19. Officer Robinson conducted a criminal history check on the CI and checked her Department of Transportation file, as is required before she could be used as an informant. He testified that the CI was not legally permitted to drive at the time, but that he had her drive to the controlled buys under his direction and supervision.[8] *See id.* at 19–20.

Officer Robinson testified that, besides the money provided to purchase the drugs, he gave the CI gas money after each of the controlled buys.[9] *See id.* at 14. He also stated that, although the CI was wired for sound during each of the buys, the audio was not recorded. *See id.* at 13–14, 16. He further testified that investigators were only able to watch the CI be buzzed into and enter the Defendant's apartment building, and could not see her enter a specific apartment in the building, but that he could hear her through the audio setup. *See id.* at 15.

## III. ANALYSIS

The Defendant argues that suppression of the evidence in this case is required based on three grounds. He argues that the warrant affidavit provided by Officer Robinson deliberately or recklessly omitted information material to the determination of probable cause, that the warrant was not issued by a magistrate acting in a neutral and detached manner, and that the good faith exception to the exclusionary rule does not apply. As the evidence seized and statements obtained would therefore be the products of an illegal search, the Defendant seeks their exclusion. The Government responds by asserting that the Defendant cannot show that Officer Robinson deliberately or recklessly omitted material information in his affidavit, that probable cause existed even

---

8. The CI's driving report revealed three incidents of having no insurance card, seven incidents of not paying fines, one instance of not having a driver's license, seven speeding violations, one instance of failure to control a vehicle, two instances of driving while license suspended, denied, cancelled, or revoked, one serious violation, and two instances of being a habitual violator. *See* Def. Ex. C.

9. Although he could not recall for certain, Officer Robinson testified that he believes he gave the CI ten dollars for gas after the first controlled buy described in the warrant affidavit, and twenty dollars after the second and third controlled buys. *See* Hr'g Tr. at 17.

**560**

if the information referred to by the Defendant was included in the warrant affidavit, by asserting that the issuing magistrate did act in a neutral and detached manner, and by arguing that, regardless, the good faith exception to the exclusionary rule applies in this case even if probable cause is lacking in the warrant affidavit. The Government concludes, therefore, that the evidence obtained by the law enforcement officers should be admitted.

### A. The Search Warrant

■ The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const., amend. IV. Thus, in order for a warrant to be issued, a showing of probable cause must be made to the official tasked with deciding whether the warrant should issue. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.; accord United States v. Gabrio,* 295 F.3d 880, 883 (8th Cir.2002). A finding of probable cause can be based on information supplied to law enforcement officers, provided that the information is reliable. When information is provided from an informant, the reliability of an informant can be demonstrated by showing that the informant has a history of providing reliable information, or if law enforcement independently corroborates the information provided by the informant. *Gabrio,* 295 F.3d at 883; *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993). "When the magistrate relied solely on the affidavit presented to him, 'only the information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Gladney,* 48 F.3d 309, 312 (8th Cir.1995) (quoting *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir.1982)).

■ The truthfulness of the factual statements made in an affidavit supporting a search warrant can be challenged. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A hearing must be held, at a defendant's request, when a defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56, 98 S.Ct. 2674. The Eighth Circuit Court of Appeals has held that the *Franks* analysis also applies to information necessary to the finding of probable cause that has been deliberately or recklessly omitted from a search warrant application. *United States v. Jacobs,* 986 F.2d 1231, 1234 (8th Cir.1993) (citing *United States v. Reivich,* 793 F.2d 957, 960 (8th Cir.1986)).

> In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false materials set to one side, the affidavit's content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 1234 (citing *Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674). " 'Mere negligence on the part of law enforcement officers,' " however, does not meet the requirement that the statement or omission be made intentionally or recklessly. *United States v. Carpenter,* 422 F.3d 738, 745 (8th Cir. 2005) (quoting *United States v. Gibson,* 123 F.3d 1121, 1124 (8th Cir.1997)).

■ Here, the Defendant argues that the omission in the search warrant application of the failed controlled buy attempt and the CI's background and reasons for becoming an informant were relevant information that was necessary for determining the CI's reliability, and therefore also necessary for determining whether probable cause existed to issue the search warrant for the Defendant's apartment in this case.[10] While the Court agrees that the information is relevant, the Court cannot say that the failure to include the information in the warrant application was due to anything more than negligence, or that the information was critical to the probable cause determination in this case. The warrant affidavit describes three successful controlled buy attempts that targeted the Defendant and were observed, to the extent practicable under the circumstances, by law enforcement officers. Officer Robinson also indicated in Attachment B the reasons why the CI was considered reliable by the law enforcement officers. This is not a case where an anonymous informant reported information to law enforcement officers, but rather is one where a CI was utilized in conjunction with law enforcement officers. and under law enforcement officers' supervision. The three successful controlled drug buys from the Defendant were the crux on which Officer Robinson was asserting probable cause for the search warrant to issue, which explains

why the failed controlled buy attempt and the CI's background were not provided when asserting the basis for finding probable cause in the affidavit. *See Technical Ordnance, Inc. v. United States,* 244 F.3d 641, 649 (8th Cir.2001) ("A law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not."). While relevant, the Court cannot say that the failure to include the information was done intentionally or recklessly by Officer Robinson, or that the omitted material was critical to the probable cause determination in this case in light of the controlled buys observed by the officers that are described in the affidavit. *See Jacobs,* 986 F.2d at 1235 (noting that "the defendant must show that the omitted material [in the warrant affidavit] would be 'clearly critical' to the finding of probable cause" (quoting *Reivich,* 793 F.2d at 961)). No showing has been made that Officer Robinson "omitted the information with an intent to mislead." *United States v. Coleman,* 349 F.3d 1077, 1084 (8th Cir.2003).

Furthermore, even if all the omitted information cited by the Defendant was included in the warrant affidavit, probable cause would have still existed to issue the search warrant. Even if the unsuccessful controlled buy attempt, the fact that the CI was recruited in exchange for Officer Robinson not pursuing a drug paraphernalia charge, and the gas money payments provided to the CI were included in the warrant affidavit, the descriptions of the three successful controlled buy attempts observed by the officers would support the Polk County District Court's finding of probable cause to issue the search warrant. The affidavit describes three instances where the CI met with officers,

---

**10.** For all practical purposes, a *Franks* hearing has occurred in this case due to the fact that Officer Robinson, the affiant in the

search warrant application, testified at the suppression hearing.

was searched and provided with money to make the drug buy, and then met with the Defendant before successfully returning with narcotics that she turned over to the officers. Two of these situations are noted as occurring at the 605 Forest Avenue apartment # 202 location, and the third buy occurred in a parking lot. The affidavit states that the CI was observed entering and exiting the apartment building each time, and was then followed to the meeting location to receive the drugs she had purchased. Likewise, during the parking lot buy, the affidavit indicates that investigators observed the CI entering and exiting the parking lot, and again followed her to the meeting location to retrieve the drugs she had purchased from the Defendant. During the parking lot buy, the affidavit indicates that the Defendant was driving a blue Oldsmobile Ceria with Iowa license plate number 744 RQM that, along with a white Chevrolet Caprice with license plate number 993 PZX, was registered to him. The affidavit also indicates that the Forest Avenue apartment utility records were checked and found to be in the name of Desiree Annette Koger, an individual the CI told investigators was the live-in girlfriend of the Defendant.

The Court believes that the descriptions of the controlled drug buys provide sufficient information to support the Polk County District Court's finding of probable cause to issue the search warrant in this case. The officers met with the CI before and after each controlled drug buy to make certain she did not have drugs on her before the transaction and to retrieve the drugs she purchased, observed each transaction to the best of their ability so as to avoid revealing their presence, and were, therefore, in position to decide whether to rely on the information she provided when applying for the search warrant. *See Carpenter,* 422 F.3d at 744 (noting that officers could assess the informant's credibility because the information was provided in person); *United States v. Robertson,* 39 F.3d 891, 893 (8th Cir.1994) (discussing how personal contact with an informant can strengthen an officer's decision to rely on the information provided). Although the affidavit only indicates that the officers observed the CI entering and exiting the parking lot and the apartment building, the description of the Defendant's vehicle and license plate, the confirmation that the utilities of the apartment are registered to the individual the CI told officers was the Defendant's live-in girlfriend, and the fact that the CI returned successfully with narcotics on three occasions after meetings with the Defendant, are sufficient corroborating details such that a reasonable person would suspect that the Defendant was the individual involved in the drug activity, and that he did indeed reside at the Forest Avenue apartment.[11] *See United States v. LaMorie,* 100 F.3d 547, 553 (8th Cir.1996) ("If some information from an informant is shown to

---

11. The Defendant essentially argues that, because the officers did not directly observe an exchange of drugs between the CI and the Defendant, whether probable cause existed to issue the warrant hinges totally on the reliability of the CI as to whether the transactions actually occurred. This argument goes too far in the context of a probable cause analysis. The inquiry is whether probable cause exists under the totality of the circumstances as related in the warrant affidavit. The CI's veracity and reliability are factors in this analysis, but so too are the officers' observations, the outcome of the controlled buys, and the other investigatory actions taken by law enforcement officers noted in the warrant affidavit. *See Carter v. United States,* 729 F.2d 935, 939 (8th Cir.1984) (noting that an informant's " 'veracity' or 'reliability' and 'basis of knowledge' are not to be accorded independent status, but are merely relevant considerations in assessing the totality of the circumstances"). The record does not support an inference that Officer Robinson deliberately or recklessly offered untrue information to the issuing Polk County District Court Judge

be reliable because of corroboration, it is a permissible inference that other, uncorroborated information is also reliable." (citing *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir.1995))); *Gladney*, 48 F.3d at 313 ("When an informant's information is at least partly corroborated ... 'attacks upon credibility and reliability are not crucial to the finding of probable cause.'" (quoting *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir.1992))). The duty of the judge issuing a search warrant is to make a "practical, common-sense decision" whether, considering all the circumstances, a reasonable person would have reason to suspect that evidence would be discovered. *Gates*, 462 U.S. at 238, 103 S.Ct. 2317. Here, the Court is at a loss as to what more the officers could have done to corroborate the information provided by the CI without risking compromising their investigation of the Defendant.[12] *See LaMorie*, 100 F.3d at 554 ("Where there is essentially nothing remaining for the police to corroborate, we will not insist on a hypertechnical application of the probable-cause standard or impose an impossible burden on investigators." (citing *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *Reivich*, 793 F.2d at 960)).

■ Furthermore, even if the issuing Polk County District Court Judge had known that Officer Robinson's indication that the CI had provided reliable information on four past occasions referred only to the controlled buys in this case, or that the CI had provided information that was the basis for the current search warrant application rather than a previous warrant issuance, the Court believes the aforementioned controlled drug buys and corroboration by law enforcement officers of information provided by the CI during those buys provided sufficient probable cause to issue the search warrant. While the statements in Attachment B of the warrant application that the informant had provided reliable information on four prior occasions and that her past information supplied the basis for one search warrant are arguably misleading, the officers' direct observation and control over the controlled buy operations noted in the affidavit diminished the importance of the CI's reliability in the probable cause determination such that the omissions or more accurate phrasing of these statements would not alter the probable cause determination in this case.[13] *See United States v. Morales*,

about the success of, or the participants in, the controlled buys.

**12.** The Defendant argues that only minimal corroboration of innocent details occurred in this case, and that the minimal corroboration is insufficient to establish probable cause because the information noted in the affidavit was supplied by the CI. The Court notes, however, that even "completely innocent activity can provide sufficient corroboration in some circumstances," *United States v. Little*, 735 F.2d 1049, 1055 (8th Cir.1984), and believes that the affidavit in this case provides sufficient corroborating information for the issuing Polk County District Court Judge to find probable cause to believe the Defendant was engaged in criminal activity under the circumstances described. *See also United States v. Arenal*, 768 F.2d 263, 267 (8th Cir.

1985) (observing that details like addresses, phone numbers, automobile registration, and use of aliases can be relevant corroborating information as part of the totality of the circumstances probable cause analysis).

**13.** The Court observes that any possible misleading of the Polk County District Court Judge due to these statements stems more from deficiencies in the Attachment B form than from any intent by Officer Robinson to buttress the CI's reliability. Officer Robinson did consider the CI reliable because she had provided reliable information in the past on four occasions; those occasions just happened to be during this investigation. Likewise, the information provided by the CI had supplied the basis for one search warrant *application*, the one at issue here, but no prior warrants from another case. Either a more

238 F.3d 952, 953 (8th Cir.2001) (finding the information provided by an informant with no record of cooperation reliable under the totality of the circumstances where law enforcement officers tape recorded conversations between the defendant and the informant and observed a meeting between them). Nor can the Court say that inclusion of the fact that the CI agreed to help law enforcement officers in order to avoid a drug paraphernalia charge, or that she has a terrible driving record, would have led to the Polk County District Court Judge not finding probable cause to issue the search warrant based on the affidavit. "[A]s a matter of law, ... courts issuing search warrants are aware of the possibility that a confidential informant may be seeking leniency in his or her own situation," and even a terrible driving record has little impact on whether an individual is trustworthy. *United States v. Hall,* 171 F.3d 1133, 1143 (8th Cir.1999) (citing *Gladney,* 48 F.3d at 315); *see also Carpenter,* 422 F.3d at 744 (recognizing that "informants are often motivated 'in the hopes of obtaining leniency with respect to their own situation [but] that does not mean they are unreliable'" (quoting *Gabrio,* 295 F.3d at 884)). As noted above, the issuance of the warrant in this case turned primarily on the controlled buys directed and observed by law enforcement officers and the corroborating details noted in the affidavit, and not on the reliability of the CI utilized by law enforcement officers in the case.

**B.** *Neutrality of the Issuing Judge*

The Defendant next argues that the Polk County District Court Judge was not acting in a neutral and detached

manner when he issued the search warrant. The purpose behind the warrant requirement of the Fourth Amendment is to interpose a neutral figure between the citizen and the police officer "engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Because reasonable minds can differ as to whether an affidavit establishes probable cause, the Supreme Court has concluded "that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)) (citations omitted). This deference is not boundless, however, and the issuing judge or magistrate must "'perform his neutral and detached function and not serve merely as a rubber stamp for the police.'" *Id.* (quoting *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)). "A magistrate failing to 'manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application' and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search." *Id.* (quoting *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–27, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)). Suppression of the evidence is appropriate in such an instance because "no reasonably well trained officer should rely on the warrant." [14] *Id.* at 923, 104 S.Ct. 3405.

detailed Attachment B form noting the basis for believing confidential informants reliable, or the foregoing of the form for written statements would avoid the possibility of misleading the reviewing Judge or Magistrate in the future.

**14.** The Court notes that the good faith exception to the exclusionary rule is also inapplicable in cases where the issuing judge or magistrate "wholly abandoned his judicial role." *Leon,* 468 U.S. at 923, 104 S.Ct. 3430.

Here, the Court cannot find that there is sufficient evidence to hold that the Polk County District Court Judge was not acting in a neutral and detached manner when he issued the warrant. The Defendant argues that the Judge's failure to indicate why he found the CI to be reliable on the Endorsement Form shows that the Judge failed to remain neutral and merely rubber stamped the warrant application. The Judge did, however, sign the warrant application, the endorsement, and the actual issued search warrant, and indicated in the endorsement that he was relying on Officer Robinson's statements in the affidavit. As discussed above, the Court believes that Officer Robinson's affidavit alone was sufficient to find probable cause to issue the search warrant in this case, which is, apparently, the same basis utilized by the issuing Polk County District Court Judge. While it is troubling that the issuing Judge did not fill out other parts of the endorsement, the Court cannot find enough evidence in the record to rule that he was acting as a rubber stamp for the police in this case. There is no dispute that the issuing Judge examined the warrant application and the accompanying affidavit and attachments. There is no indication that the Judge took on a law-enforcement role or mentality or that he received any sort of benefit that would influence his decision. *See, e.g., Lo–Ji Sales,* 442 U.S. at 327, 99 S.Ct. 2319 (invalidating the warrant where the issuing justice "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation"); *Connally v. Georgia,* 429 U.S. 245, 250, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977) (per curiam) (declaring unconstitutional a Georgia system that paid magistrates based on the number of warrants issued). Thus, there is no indication in the record that the Polk County District Court Judge's failure to fill out the rest of the endorsement form was due to anything other than oversight.

*Cf. United States v. Decker,* 956 F.2d 773, 777 (8th Cir.1992) (issuing Judge admitted not reading part of the affidavit, omitted items to be seized from the issued warrant, and admitted issuing the warrant based on what the officer told him rather than what was in the warrant and affidavit). The Court cannot find that the record supports a finding that the issuing Polk County District Court Judge "wholly abandoned his judicial role," as contemplated by the Supreme Court in *Leon,* such that the warrant should be ruled invalid in this case. 468 U.S. at 923, 104 S.Ct. 3430.

### C. *Good Faith*

 The Government also argues that, even if the search warrant was improperly issued, evidence obtained pursuant to an invalidated search warrant does not need to be suppressed under the exclusionary rule if the law enforcement officials executing the warrant acted in objectively reasonable reliance on the issuing court's determination that probable cause existed to issue the warrant. *Id.* at 922–23, 104 S.Ct. 3430; *United States v. Terry,* 305 F.3d 818, 823 (8th Cir.2002). Absent proof that the issuing Judge abdicated his neutral role, that officers were dishonest or reckless in preparing the affidavit, or could not have harbored an objectively reasonable belief in the existence of probable cause, the good faith exception to the warrant requirement is applicable. *Leon,* 468 U.S. at 926, 104 S.Ct. 3430.

The good-faith exception does not apply in four circumstances: (1) when the issuing judge is misled by information in the affidavit the affiant knows or should know is false; (2) when the issuing judge completely abandons his judicial role; (3) when the affidavit includes so little indicia of probable cause that official belief in its existence is entirely unreasonable; and (4) when the warrant is so facially deficient that the executing

officer cannot reasonably presume it to be valid.

*United States v. Hessman,* 369 F.3d 1016, 1021 (8th Cir.2004) (citing *Leon,* 468 U.S. at 923, 104 S.Ct. 3430; *LaMorie,* 100 F.3d at 555).

 As the Court has found that Officer Robinson did not intentionally or recklessly mislead the issuing Polk County District Court Judge with his affidavit, that the issuing Judge did not abandon his judicial role, and that the affidavit itself provided probable cause to support issuance of the warrant, the only remaining question is whether the warrant is so facially deficient that the executing officer could not presume it to be valid if probable cause were later found to be lacking for its issuance. While, as noted above, the endorsement form signed by the Polk County District Court Judge might give pause to an executing officer, the fact that the endorsement and the warrant itself are signed and dated by the issuing Judge, along with the detail provided in the affidavit and the search warrant itself, lead the Court to find that the officers relying on the Judge's probable cause finding and executing the search warrant in this case did so in good faith. *See United States v. Scroggins,* 361 F.3d 1075, 1083 (8th Cir. 2004) ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination.... Penalizing an officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (citing *Leon,* 468 U.S. at 920–21, 104 S.Ct. 3405)). The Court cannot find, based on the information contained in the search warrant materials, that a " 'reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.' " *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (quoting *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405). The affidavit provided enough information to establish probable cause, the endorsement indicates that the affidavit was relied upon by the issuing Polk County District Court Judge, and the search warrant describes with particularity the places to be searched and the items to be seized.

## IV. CONCLUSION

For the reasons discussed above, the Defendant's Motion to Suppress Evidence (Clerk's No. 31) is DENIED. The physical evidence seized, and the statements provided by the Defendant to law enforcement officers during the execution of the search warrant are admissible at trial.

IT IS SO ORDERED.