# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3742
_____

United States of America

*Plaintiff - Appellee*

v.

Mark Eggerson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: November 17, 2020
Filed: June 7, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Mark Eggerson was convicted of being a felon in possession of a firearm. He appeals the district court's[1] denial of his motion to suppress, arguing that a cell phone

---

[1]The Honorable Donovan W. Frank, Senior United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable

video of him shooting a gun should have been excluded because the warrants used to obtain the video were facially deficient.  We affirm.

## I.

After Eggerson, a convicted felon, sold 1.1 grams of heroin to a confidential informant, an investigator from the La Crosse Police Department applied for a warrant in Wisconsin state court to search Eggerson's house and car.  To support the warrant, the investigator testified that Eggerson sold heroin in a controlled buy the day before, that the CI arranged for a second controlled buy, and that Eggerson pulled a handgun during a bar fight a few weeks earlier.  The investigator did not mention a cell phone.

The Wisconsin judge signed the warrant and authorized the search of Eggerson's car and house and any cell phones found in either location.  The warrant also permitted police to search for and seize "items tending to show possession and/or ownership of firearms" based on the investigator's testimony that "big-time drug dealers who have been in prison are going to protect themselves with firearms" and the report that Eggerson had in fact brandished a gun.  Gov. App. 8–14.

Officers executed the warrant after a second controlled buy and seized a cell phone, which had videos showing Eggerson shooting a gun near a barn.  The next day, a relative of Eggerson's former girlfriend called Minnesota law enforcement to tell them about guns discovered in the relative's barn. Officers found the guns at the barn.

The investigator then applied for a second state search warrant for the cell phone and its contents, including text messages between Eggerson and his former girlfriend.  The application did not mention the videos already seen by the

___

Katherine M. Menendez, United States Magistrate Judge for the District of Minnesota.

investigator, but the investigator testified that he confirmed Eggerson's cell phone was the phone used to arrange the controlled buy with the CI. The second search warrant was approved.

A grand jury indicted Eggerson for being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). He filed a motion to suppress evidence obtained under the two state search warrants. The reviewing magistrate judge noted that "although the [first] search warrant was based on an imperfect articulation of the justification for the search of Mr. Eggerson's cell phone," suppression was unwarranted because of the good faith exception to the exclusionary rule. D. Ct. Dkt. 72 at 3. The magistrate further concluded that even if the first warrant was defective, the second warrant was not. *Id.* The district court adopted the magistrate's report and recommendation. A jury convicted Eggerson after a three-day trial.

Eggerson appeals, arguing the district court erred by refusing to suppress the evidence from his cell phone. The Government does not rely on the second warrant, but we consider it because Eggerson says both warrants are invalid.

II.

We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *United States v. Stevenson*, 727 F.3d 826, 829 (8th Cir. 2013). The Fourth Amendment prohibits unreasonable searches and seizures and requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized."

If evidence was gathered in violation of the Fourth Amendment, it may be suppressed under the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 906 (1984). But even when a search warrant is defective or invalid, the good faith exception may apply. *Id.* at 925. *Leon* establishes that if an officer (1) obtains a search warrant (2) that appears properly issued on its face and (3) executes it within

its scope and with objective good faith reliance on the warrant's validity, then a defect in the probable cause analysis undergirding that warrant will not cause evidence to be suppressed. *See id.* at 922. *Leon* cannot be invoked when the warrant is so facially deficient that no police officer could reasonably presume the warrant is valid. *Id.* at 923.

The police officers investigating Eggerson's case properly executed two search warrants. Eggerson says the "warrants were general in nature and therefore [we]re not supported by probable cause," making the warrants facially invalid and objective good faith reliance on them impossible. Eggerson Br. 8. Because of that, he argues these were warrantless searches in violation of *Riley v. California*, 573 U.S. 373 (2014), so the good faith exception cannot apply.

We note first that cell phones are now so widespread as to be ubiquitous. *See Riley*, 573 U.S. at 395. There is no reason to suspect that drug dealers are any less likely than regular people to have and use a cell phone. *See, e.g.*, *United States v. Williams*, 976 F.3d 807, 810 (8th Cir. 2020); *United States v. Denson*, 967 F.3d 699, 703 (8th Cir. 2020). In fact, given the nature of the business and the need for easy and instantaneous communication with buyers, drug dealers may be even more likely to use cell phones. If firearms are "tool[s] of the [drug] trade," as we have often said, there is little reason to believe that cell phones are not. *United States v. Fuentes Torres*, 529 F.3d 825, 827 (8th Cir. 2008) (citation omitted).

A.

The first warrant authorized police to search for guns, items tending to show possession of guns, and electronic storage devices which would tend to store or send information relating to illegal drug trafficking. Eggerson argues that because the warrant specifically authorized searching electronic devices for evidence of drug dealing, officers could not "reasonably believe the [] warrant provided probable cause to search the cell phone [for] evidence [of Eggerson's] possession of firearms." Eggerson Br. 15.

But the first warrant explicitly permitted the officers to search for "items tending to show possession and/or ownership of firearms such as . . . documentation." Gov. App. 14. And at the search warrant hearing, the investigator testified that Eggerson could be armed because he recently brandished a gun in a bar fight and pointed it at someone's face. Under these circumstances, an objectively reasonable officer could have believed that the warrant permitted him to search for evidence of illegal gun possession.[2]

## B.

Eggerson next argues that no reasonable police officer would rely on what he says is an impermissible general warrant. Eggerson chiefly relies on *United States v. Griffith*, where the D.C. Circuit said that a warrant which "broadly authorized the seizure of *all* cell phones and electronic devices without regard to ownership" was overbroad. 867 F.3d 1265, 1276 (D.C. Cir. 2017) (emphasis in original). Because the court found the warrant in that case lacked probable cause and was overbroad, it held that, "[t]aken together," the combination of both infirmities "br[ought] the warrant beyond the good-faith exception's reach." *Id.* at 1279.

Eggerson says his case is like *Griffith* because the first warrant did not require any seized phone to be tied to his crimes, but rather allowed seizure of any cell phone found in his apartment or vehicle. He argues that this makes the warrant overbroad. But Eggerson overlooks significant factors distinguishing his case from *Griffith*.

In *Griffith*, the court explained that the warrant was overbroad because it explicitly permitted "all electronic devices" in a home to be seized without regard to ownership or likelihood of involvement in the suspected crime. *Id.* at 1276. The court cautioned that "warrant[s] must be tailored to the justifications" offered in

---

[2]Because Eggerson's argument against the second warrant on this point tracks his argument against the first warrant, it is similarly foreclosed by our caselaw.

support of them and the warrant "should have limited the scope of permissible seizure to devices owned by Griffith, or devices linked to [the crime]." *Id.*

Analyzing probable cause, the court determined that the passage of time between Griffith's suspected crime and the search warrant's execution—over a year—suggested there was no probable cause to search Griffith's home for those devices. *Id.* at 1274–75. The court said that any phones police found there were unlikely to contain incriminating evidence after so long, especially because Griffith had been aware of the criminal investigation for "more than four months" before the warrant was issued and could easily have destroyed any electronic evidence. *Id.* at 1274. Also, Griffith was recently released from prison and police knew his potential co-conspirator did not have a cell phone. *Id.* at 1273.

This case is different, at least insofar as the good faith exception is concerned.[3] The warrant here authorized officers to seize "items tending to show possession and/or ownership of firearms such as . . . documentation," and "[c]omputers, and all components thereof . . . which would tend to process, compile, store or send information relating to the illegal trafficking or possession of controlled substances." Gov. App. 14. It also authorized the search and seizure of "cellular telephones . . . and other electronic means of communication or personal data storage." *Id.* In light of these provisions, a reasonable officer could have read the warrant to permit him to search and seize cell phones only to the extent they were tied to illegal drug and firearm possession, limiting the property to be searched to both the suspect and the crime under investigation. *See United States v. Hessman*, 369 F.3d 1016, 1020 (8th Cir. 2004) (stating that the good faith exception applies unless, among other things, "the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid"); *see also United States v. Tracey*, 597 F.3d 140, 154 (3d Cir. 2010) ("Read as a whole, this warrant did not authorize an exploratory rummaging . . . . [A]nd a reasonable officer could rely on it."). Plus,

---

[3]We do not mean to suggest that *Griffith* reflects the law of this circuit or that we would follow that opinion, just that this case is different.

the warrant was obtained the day after the initial controlled buy—not more than a year after the suspected crime took place. There was also no evidence suggesting that Eggerson was unlikely to have a phone or that he was likely to have destroyed evidence due to his knowledge of the criminal investigation and the passage of time.

Because of the facts distinguishing Eggerson's case from *Griffith*—which we emphasize is not the law of this circuit—we conclude the good faith exception applies.

C.

Eggerson's argument about the lack of probable cause relies entirely on his suggestion that the warrants were "general in nature" and so "lacked probable cause" because they were overbroad. Eggerson Br. 8. Even if we read Eggerson's argument charitably and assume he addressed the merits of the probable cause determination separately from particularity, we still conclude that the state magistrate's probable cause determination had a "substantial basis." *United States v. Roberts*, 975 F.3d, 709, 713 (8th Cir. 2020).

"We review the issue of probable cause *de novo*, according great deference to the determination of the magistrate or judge who issued the warrant." *Id.* Our task is to consider whether the issuing judge had a "substantial basis" to conclude that probable cause existed. *Id.* (citation omitted).

We agree with the federal magistrate judge's conclusion, adopted by the district court, that because cell phones are "ubiquit[ous]" and "the primary means of communication for most people, it was not unreasonable for [the state magistrate] to infer that cell phones were being used in connection with the alleged drug dealing. . . ." D. Ct. Dkt. 72 at 6. Unlike the defendant in *Griffith*, the district court did not find that Eggerson was a criminal just released from prison—a population less likely to possess and use cell phones than other people. *See Griffith*, 867 F.3d at 1272–73.

-7-

We further agree with the federal magistrate judge that it was "reasonable to infer that cell phones found at a location associated with drug trafficking and on the person of an individual associated with [drug trafficking] had a fair probability of containing evidence of the crime." D. Ct. Dkt. 72 at 6. After all, we have said that "an issuing judge [may] draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant . . . ." *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (citation omitted). One such reasonable inference is that Eggerson arranged the controlled buys using a cell phone. It would be unreasonable and impractical to demand that judges evaluating probable cause must turn a blind eye to the virtual certainty that drug dealers use cell phones. There was a substantial basis to find that probable cause existed to seize Eggerson's phone. Even if there were not, we would nonetheless conclude the good faith exception applies.

D.

In *Riley*, the Supreme Court instructed police that if they want to search a cell phone, they must generally "get a warrant." 573 U.S. at 403. The officers here did. Twice. Because the first warrant did not authorize an "expansive sweep [that] far outstripped the police's proffered justification," the animating overbreadth concern in *Griffith* is not squarely presented in this case. 867 F.3d at 1276. The second warrant, which police got after they seized Eggerson's phone and which was limited to its contents, is even less suspect. These warrants were supported by probable cause, were not facially deficient, and were relied on in objective good faith. Even assuming that the warrants were defective, the good faith exception applies here. The district court committed no error in denying Eggerson's motion to suppress.

III.

The judgment of the district court is affirmed.

_____

-8-