# United States Court of Appeals

## For the Eighth Circuit

_____

No. 24-1195

_____

United States of America

*Plaintiff - Appellee*

v.

Ethan Porter

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: February 11, 2025
Filed: June 23, 2025

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Ethan Porter pleaded guilty to possessing a firearm as a prohibited person, 18 U.S.C. §§ 922(g)(1), (g)(3), (g)(9), and 924(a)(2), and the district court[1] applied the cross-reference enhancement for possessing a gun in connection with drug

---

[1]The Honorable C.J. Williams, now Chief Judge, United States District Court for the Northern District of Iowa.

trafficking, U.S.S.G. §§ 2K2.1(c)(1)(A), 2X1.1(a), and 2D1.1, and the obstruction of justice enhancement, U.S.S.G. § 3C1.1. We affirm his sentence.

I.

Porter was on supervision with the state of Iowa. During a home visit to his hotel room, correctional services officers found a loaded gun in a backpack on his bed and arrested him. Officers also saw a cooler on the bed and found three cell phones and glass vials in its main compartment. They did not search the cooler's side pockets. The gun was later traced to Porter's acquaintance, a man known as Smoke.

Later that night, Porter's father went to the hotel to clean out the room. The door had been rigged to prevent locking so anyone could go into the room, and hotel surveillance video shows several people coming and going in the days preceding Porter's arrest. In the early morning hours, hotel staff moved Porter's remaining things into a locked storage closet.

Meanwhile in jail, Porter called a friend saying, "It's Smoke's. It's in Smoke's name. That's why Sammie needs to call him." The next morning, Porter called his mother, "Tell Sammie that, f***ing, I don't know if she knows yet, but tell her what happened, and tell her to call Smoke, and tell him to come down and get it, and tell him that it was his, and that he knows that it was there, or that he left it there and that I didn't know." His mother responded, "The gun?" Porter, "Oh, my G**." And a day later, Porter again called the friend, "What's up with Smoke? All he has to do is to, f***ing for this whole thing to disappear is f***in' . . . He doesn't even have to say [he was in the room]. Just say that it's his, 'cause it is."

Five days later, officers searched Porter's property in the hotel storage closet. In the side pocket of the cooler, they found 6.27 grams of ice methamphetamine, 24 Xanax pills, some marijuana, and a clear bag with several smaller bags inside.

II.

For both the cross reference and obstruction of justice enhancements, we review the district court's factual findings for clear error and its interpretation of the Guidelines *de novo*. *United States v. Harper*, 124 F.4th 1094, 1100 (8th Cir. 2025) (cross-reference); *United States v. Kock*, 66 F.4th 695, 706 (8th Cir. 2024) (obstruction of justice). The court must find facts by a preponderance of the evidence. *See Harper*, 124 F.4th at 1100.

A. Cross-Reference

U.S.S.G. § 2K2.1 sets the base offense level for unlawful possession of a firearm. "[I]f the court finds that the defendant used the [firearm] 'cited in the offense of conviction in connection with the attempted commission of another offense,' however, §§ 2K2.1(c)(1)(A) and 2X1.1(c)(1) direct the court to cross-reference to the Guidelines section that expressly covers the other offense." *Harper*, 124 F.4th at 1100 (citation omitted). The district court found that Porter possessed with intent to distribute more than five grams of ice methamphetamine and applied the related cross-reference, § 2D1.1(c)(8), with a two-level increase for the firearm, § 2D1.1(b)(1). This resulted in a higher base offense level than for just unlawfully possessing a firearm. *See* § 2K2.1(a)(6).

Porter argues that the methamphetamine in the side pocket of the cooler wasn't his, suggesting that someone else could have put the drugs there after he was arrested. That is possible, but Porter does not say why anyone would do that. And the cooler belonged to Porter—it was with him on the bed with his three cell phones and an insurance card in his name—so it is at least as likely the drugs were his. *See United States v. Halloran*, 415 F.3d 940, 944 (8th Cir. 2005) (no clear error when district court found facts there were "equally plausible" to defendant's story).

Porter next argues that because he was using two to three grams of methamphetamine a day, the 6.27 grams of methamphetamine was only a user

quantity and cannot show an intent to distribute. The Government presented unchallenged testimony that 6.27 grams of methamphetamine was "a distribution quantity" and worth "approximately $700." And there was other evidence to support the inference of distribution: a scale for weighing drugs, *see United States v. McClellon*, 578 F.3d 846, 856 (8th Cir. 2009), small baggies for distribution of methamphetamine, *see United States v. Fang*, 844 F.3d 775, 779 (8th Cir. 2016), three cell phones, *see United States v. Eggerson*, 999 F.3d 1121, 1125 (8th Cir. 2021), and surveillance video showing several people coming and going from Porter's room, *see United States v. Carter*, 270 F.3d 731, 734 (8th Cir. 2001). And Porter had a loaded gun within his reach, *see United States v. White*, 969 F.2d 681, 684 (8th Cir. 1992). The district court said it was "a close call," but the court's finding that Porter had an intent to distribute was not clearly erroneous.

Last, Porter relies on *United States v. Walker*, 900 F.3d 995 (8th Cir. 2018) (per curiam), to argue that the district court erred in finding a nexus between the gun and the drugs. But in *Walker*, "the other felony offense [wa]s mere possession of drugs." *Id.* at 997. Here, the cross-reference offense was for possession of methamphetamine with intent to distribute—a drug trafficking offense that is treated differently by the Guidelines. *Id.* "The guideline commentary specifies that the cross reference applies 'in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.'" *United States v. Sewalson*, 36 F.4th 832, 833 (8th Cir. 2022) (quoting § 2K2.1, cmt. n.14(B)). Active use of the firearm is not required; it is enough that Porter possessed the loaded gun in the hotel room with the drugs he intended to distribute. *See id.* at 833–34.

## B. Obstruction of Justice

The district court found that Porter's jailhouse phone calls were an attempt to have Smoke say he had left the gun in Porter's hotel room. Because it was contrary to Porter pleading guilty to knowing possession, the district court applied the obstruction of justice enhancement. *See* U.S.S.G. § 3C1.1. The application notes

read in part that covered conduct includes "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so." § 3C1.1, cmt. n.4(A). The Supreme Court recently held that "[t]he 'otherwise' provision of [a criminal statute] is . . . limited by the preceding list of criminal violations." *Fischer v. United States*, 603 U.S. 480, 489 (2024). So according to Porter, the phrase "otherwise unlawfully influencing" in the application notes means that his conduct must have threatened or intimidated someone for the obstruction of justice enhancement to apply. As Porter did not threaten or intimidate anyone with his jail calls, he argues the district court should not have applied to obstruction enhancement.

*Fischer* does not change our interpretation of the obstruction of justice enhancement. *See Beckles v. United States*, 580 U.S. 256, 265 (2017) (Unlike criminal statutes, "[t]he advisory Guidelines . . . do not implicate the twin concerns underlying the vagueness doctrine—providing notice and preventing arbitrary enforcement."). The application note gives "a non-exhaustive list of examples" of obstructive conduct. § 3C1.1, cmt. n.4. So the obstruction enhancement is not limited to conduct akin to threatening or intimidating, and the district court did not clearly err in applying it for Porter trying to have Smoke claim the gun. *See United States v. Boen*, 59 F.4th 983, 996–97 (8th Cir. 2023) (no clear error in obstruction enhancement when defendant attempted to persuade witness to proffer defendant's version of events).

III.

Affirmed.

_____