# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1837

_____

United States of America

*Plaintiff - Appellee*

v.

Damion Kent Hallmon, also known as Damion Kent Adam L. Hallmon, also known as Damion Kale Hallmon, also known as Damien Kent Hallmon, also known as Damion Kent Hallman, also known as Damion Kale Hallman, also known as Dee X, also known as Daniel K. Tanner, also known as Marcus Jamaine Wallace, also known as Damion K. Williams

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 14, 2025
Filed: April 24, 2026

_____

Before BENTON, KELLY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury found Damion Kent Hallmon guilty of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The district court[1] sentenced Hallmon to 74 months of imprisonment and three years of supervised release. Hallmon appeals, claiming the district court erred by denying his pretrial motions to suppress evidence and statements, determining there was sufficient evidence that the ammunition traveled in interstate commerce, excluding recorded jail phone calls, and imposing an offense level enhancement for obstruction of justice. Hallmon also argues his charge and conviction violate the Second Amendment. We affirm.

## I. Background

On August 28, 2022, Officer LeBaron of the Bloomington, Minnesota Police Department saw a suspended object hanging from the rearview mirror of a vehicle, in violation of Minnesota law. Officer LeBaron then ran a license plate query on the vehicle and discovered its registered owner, Hallmon, had a suspended driver's license. Officer LeBaron visually confirmed Hallmon was driving the vehicle and conducted a traffic stop. Shortly after, Officer Witt joined Officer LeBaron.

At the time of the stop, the vehicle had four occupants: Hallmon, Ieisha McGrone, and their two children. Hallmon identified McGrone as his fiancée. After stating the reasons for the traffic stop, Officer LeBaron instructed Hallmon to exit the vehicle. While Hallmon exited, Officer LeBaron observed a bag that appeared to contain marijuana on the floorboard. Officer LeBaron grabbed the bag and remarked it smelled like marijuana. Hallmon agreed. Officer LeBaron then asked Hallmon if there was other drug paraphernalia in the car. Hallmon answered there might be some marijuana in the ashtray. Consequently, Officer LeBaron decided to

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

-2-

search the vehicle and instructed the passengers to exit.  As McGrone and the children left the car, Hallmon told McGrone to grab her handbag, which was sitting in the front passenger seat, but Officer LeBaron told her to leave it.

During the search, Officer LeBaron opened the handbag and found a loaded pistol.[2]  After securing and unloading the pistol, Officer LeBaron spoke to McGrone about the firearm.  McGrone eventually told Officer LeBaron the firearm belonged to Hallmon, and that he gave it to her.  Officer LeBaron then spoke to Hallmon. Hallmon stated he was "taking the fall" for the firearm and that the firearm was his. Hallmon correctly identified the color and caliber of the firearm, and explained he handed it to McGrone during the stop.  Officer LeBaron arrested Hallmon.

Hallmon was indicted for being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  Before trial, Hallmon filed a motion to suppress evidence obtained during the search of his vehicle and a motion to suppress statements given to Officer LeBaron.  A magistrate judge held a hearing on Hallmon's motions and issued a report and recommendation that the district court deny the motions.  The district court adopted the report and recommendation and denied both motions.  Hallmon also filed a motion to dismiss the indictment before trial, arguing it violated the Second Amendment.  The district court denied the motion.

The district court held a five-day jury trial.  At trial, Special Agent Lervoog of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives testified that the recovered ammunition had moved in interstate commerce.  Additionally, Hallmon sought to introduce recorded jail calls between himself and McGrone.  The district court excluded the calls as inadmissible hearsay.  Hallmon testified, but

---

[2]The pistol seized, a Polymer 80, did not have a serial number and is commonly referred to as a "ghost gun" or "privately made firearm."

McGrone did not, asserting her Fifth Amendment privilege. The jury found Hallmon guilty.

At sentencing, the district court applied a two-level enhancement for obstruction of justice and sentenced Hallmon to 74 months of imprisonment and three years of supervised release. Hallmon timely appeals.

## II. Analysis

Hallmon argues the district court erred by (1) failing to suppress evidence obtained from the vehicle; (2) failing to suppress his statements to Officer LeBaron; (3) excluding the recorded jail phone calls; (4) finding there was sufficient evidence the ammunition traveled in interstate commerce; (5) imposing an offense level enhancement for obstruction of justice; and (6) denying his motion to dismiss because his charge and conviction violate the Second Amendment. We address each argument in turn.

### A. Motion to Suppress Evidence

First, Hallmon argues the district court erred by denying his motion to suppress evidence. "We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Guzman*, 926 F.3d 991, 997 (8th Cir. 2019) (quoting *United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure and therefore must be supported at least by reasonable suspicion." *Guzman*, 926 F.3d at 997. An officer has reasonable suspicion "when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). When we evaluate reasonable suspicion, we consider "the totality of the

circumstances — the whole picture . . . ." *Cortez*, 449 U.S. at 417. "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (cleaned up).

However, "a lawfully-initiated traffic stop can become unlawful if it is unreasonably extended." *United States v. Callison*, 2 F.4th 1128, 1131 (8th Cir. 2021). "Generally, a stop should last no longer than is necessary to confirm or dispel the officer's suspicions." *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008); *see also Rodriguez v. United States*, 575 U.S. 348, 350 (2015) ("[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."). But "an officer may extend the traffic stop if he develops reasonable suspicion of additional criminal activity." *United States v. Virrueta*, 121 F.4th 706, 710 (8th Cir. 2024); *see also United States v. Gastelum*, 11 F.4th 898, 902 (8th Cir. 2021) ("An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." (quoting *United States v. Magallon*, 984 F.3d 1263, 1278 (8th Cir. 2021))).

Separately, a police officer may lawfully search "every part of the vehicle and its contents that may conceal the object of the search," if they have probable cause. *United States v. Ross*, 456 U.S. 798, 825 (1982). "[P]robable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Vittetoe*, 86 F.4th 1200, 1203 (8th Cir. 2023). "The government bears the burden of demonstrating that the officers had probable cause at the time they searched the [vehicle]." *Id.*

Here, Hallmon argues the vehicle stop, its duration, and the subsequent search of the vehicle violated the Fourth Amendment. We disagree.

First, the vehicle stop was constitutional. At the suppression hearing, Officer LeBaron testified he stopped the vehicle because he saw a suspended object that was obstructing the driver's view and because he discovered the vehicle's registered owner, who appeared to be the driver, had a suspended license. In Minnesota, it is illegal to drive with an object "suspended between the driver and the windshield," Minn. Stat. § 169.71, subd. 1(a)(2), and it is illegal to drive with a suspended license. Minn. Stat. §171.24, subd. 1(1). Consequently, for either reason, Officer LeBaron had probable cause to initiate the stop and the stop comports with the Fourth Amendment. *See United States v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009) ("Any traffic violation, however minor, provides probable cause for a traffic stop." (quoting *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008))).

Although Hallmon argues that Officer LeBaron's body camera footage does not depict what Officer LeBaron saw at the initiation of the stop, the footage does show that the vehicle had a suspended object and Hallmon admitted his license was suspended. In other words, the body camera footage and Hallmon's admission validated Officer LeBaron's claimed reasons for the stop. Further, the magistrate judge was best positioned to weigh Officer LeBaron's credibility and did not clearly err in believing his account of the events.[3] *See United States v. Riley*, 684 F.3d 758, 762 (8th Cir. 2012); *see also United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012) ("[W]hen the trial judge's credibility determination is based upon 'a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.'" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985))). Therefore, we reject Hallmon's first argument.

Second, the duration of the vehicle stop was constitutional. Officer LeBaron began the traffic stop by discussing the suspected traffic violations with Hallmon.

---

[3]The district court reviewed the magistrate judge's credibility findings de novo, and it determined Officer LeBaron's testimony was credible and established probable cause for the vehicle stop.

He then went to his squad car to run a criminal history check on Hallmon. Officer LeBaron's questions and actions were related to the purpose of the traffic stop and did not unreasonably prolong its duration. *See United States v. Roberts*, 687 F.3d 1096, 1099 (8th Cir. 2012). Additionally, Officer LeBaron testified that during the stop Hallmon appeared nervous and displayed physical signs consistent with marijuana use — bloodshot eyes, watery eyes, and dilated pupils. Together, these observations provided Officer LeBaron with lawful grounds to continue the stop "based on new facts creating a reasonable articulable suspicion of criminal activity." *United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993); *see also United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011).

Nonetheless, Hallmon contends the body camera footage does not corroborate Officer LeBaron's testimony because it does not show he was nervous or displayed physical signs of drug use. However, as the district court noted, the footage's resolution may not show details that were visible to Officer LeBaron's naked eye. And we decline to depart from the magistrate judge's and district court's determinations that Officer LeBaron's testimony was credible. *See Wright*, 512 F.3d at 472 ("We give great deference to a lower court's credibility determinations because the 'assessment of a witness's credibility is the province of the trial court.'" (quoting *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir. 1995))). As a result, we do not find that the vehicle stop was unconstitutionally extended.

Third, the vehicle search was constitutional. Officer LeBaron lawfully instructed Hallmon to exit the vehicle. *See United States v. Gonzalez-Carmona*, 35 F.4th 636, 641 (8th Cir. 2022). As Hallmon exited the vehicle, Officer LeBaron saw a small bag on the driver's side floorboard, which appeared to contain marijuana. Officer LeBaron picked up the bag, indicated it smelled like marijuana, and asked Hallmon if it contained marijuana. Hallmon agreed it smelled like marijuana. Officer LeBaron then asked Hallmon if there were other narcotics or drug paraphernalia in the vehicle, and Hallmon stated there may be some marijuana in the ashtray. Accordingly, Officer LeBaron ordered the passengers to leave the vehicle and he searched the car. Considering the marijuana bag Officer LeBaron had already

discovered and Hallmon's admission, there was a "fair probability that contraband or evidence of a crime" would be found in Hallmon's vehicle during a search. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, Officer LeBaron had probable cause to conduct the search. *See United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) (finding probable cause to conduct an automobile search where the officers smelled marijuana and the driver admitted to smoking marijuana).

In conclusion, the district court did not err by denying Hallmon's motion to suppress evidence.

### B. Motion to Suppress Statements

Second, Hallmon argues the district court erred by failing to suppress statements he made during the stop because he was in custody and was not given *Miranda* warnings. "We review the district court's factual findings for clear error and its legal conclusions, including the question of custody, *de novo*." *United States v. Roberts*, 975 F.3d 709, 715 (8th Cir. 2020).

"Law enforcement officials must administer *Miranda* warnings before interrogating persons in their custody." *Id.*; *see Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). If law enforcement does not administer *Miranda* warnings, any statements made during a custodial interrogation must be suppressed. *See United States v. Thompson*, 976 F.3d 815, 823–24 (8th Cir. 2020). Absent a formal arrest, a person is "in custody" where there is a "restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (cleaned up). This inquiry turns on whether, under the totality of the circumstances, an objectively reasonable person in the suspect's shoes would have felt free to terminate the interrogation and leave. *Roberts*, 975 F.3d at 716. In making this inquiry, we consider six non-exhaustive factors: whether the suspect (1) was told "questioning was voluntary," (2) "possessed unrestrained freedom of movement," (3) "initiated contact with authorities or voluntarily acquiesced" to questioning, (4) was subjected to "strong arm tactics or deceptive stratagems," (5)

was in a police-dominated atmosphere, and (6) was ultimately "placed under arrest . . . ." *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). Generally, a "traffic stop does not constitute custody for purposes of *Miranda* because 'a traffic stop is presumptively temporary and brief' and 'circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police.'" *United States v. Thompson*, 976 F.3d 815, 824 (8th Cir. 2020) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437–38 (1984)). But "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Berkemer*, 468 U.S. at 440.

Under our precedent and considering the *Griffin* factors, we conclude Hallmon was not in custody. Although Hallmon was asked to step outside the vehicle, and he spoke with Officer LeBaron away from others, Hallmon was not constrained to "the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125. Hallmon was not handcuffed nor forced to sit in a patrol car. *See United States v. Soderman*, 983 F.3d 369, 377 (8th Cir. 2020) (finding these facts evidenced "a degree of free movement"). Further, the atmosphere was not "police dominated"; only two officers were present during the stop and Hallmon spoke alone with Officer LeBaron. *See United States v. Sandell*, 27 F.4th 625, 630 (8th Cir. 2022). Officer LeBaron did not employ any strong arm or deceptive tactics during the relatively brief questioning. And Hallmon continued to converse with Officer LeBaron.

While Officer LeBaron initiated questioning, did not tell Hallmon he was not in custody, and ultimately arrested Hallmon, the circumstances here do not resemble those in which we have determined a suspect was in custody. *See United States v. Czichray,* 378 F.3d 822, 827 (8th Cir. 2004) ("'[C]ustody' cannot be resolved merely by counting up the number of factors on each side of the balance . . . ."); *see also United States v. Puckett*, 139 F.4th 730, 742–44 (8th Cir. 2025). As a result, the district court correctly denied Hallmon's motion to suppress the statements because Officer LeBaron was not required to advise Hallmon of his *Miranda* rights before the arrest.

-9-

## C. Sufficiency of the Evidence

Third, Hallmon argues there was insufficient evidence to establish the ammunition he possessed traveled in interstate commerce, a requisite element of the convicted offense. *See* § 922(g)(1). "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Perez*, 61 F.4th 623, 627 (8th Cir. 2023) (quoting *United States v. Acosta*, 619 F.3d 956, 960 (8th Cir. 2010)). "Evidence supporting a conviction 'need not preclude every outcome other than guilty.'" *Id.* (alteration incorporated) (quoting *United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008)). "We will overturn a conviction on appeal only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

Hallmon contends the government's only evidence related to the interstate commerce element was Special Agent Lervoog's testimony, which was insufficient because he did not disprove Hallmon's theory that the bullets were counterfeit ammunition. Hallmon's argument is unpersuasive; the prosecution's evidence "need not exclude every reasonable hypothesis except that of guilt; it is sufficient if there is substantial evidence justifying an inference of guilt . . . ." *United States v. Alvarado-Sandoval*, 997 F.2d 491, 493 (8th Cir. 1993) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1316 (8th Cir. 1980)). Special Agent Lervoog testified the ammunition traveled in interstate commerce after inspecting the ammunition and its headstamps. Specifically, he testified that the ammunition was made by several different manufacturers, all of which are located outside of Minnesota. This testimony is legally sufficient for the jury to conclude, beyond a reasonable doubt, the ammunition was manufactured outside of Minnesota and, thus, traveled in interstate commerce. *See United States v. Haynes*, 62 F.4th 454, 458–59 (8th Cir. 2023) (holding that expert testimony about a firearm's location of manufacture satisfies the government's burden to prove § 922(g)(1)'s interstate commerce element).

## D. Exclusion of the Recorded Jail Calls

Fourth, Hallmon challenges the district court's exclusion of several phone calls he had with McGrone while he was in jail. Hallmon sought to introduce the calls because he claims McGrone's statements support an inference that McGrone owned the firearm and ammunition, not him. But the district court excluded the calls on the basis they were inadmissible hearsay. Hallmon argues the district court erred for three reasons: (1) the calls were admissible under the present state of mind exception, Fed. R. Evid. 803(3); (2) the calls were admissible under the residual exception, Fed. R. Evid. 807; and (3) his due process rights were offended by their exclusion. "We review evidentiary rulings for an abuse of discretion, but our review is de novo when the challenge implicates a constitutional right." *United States v. West*, 829 F.3d 1013, 1017 (8th Cir. 2016). "Even where an evidentiary ruling is an abuse of discretion or violates a constitutional proscription, however, we will not reverse unless the error is more than harmless in that it affected a substantial right or had more than a slight influence on the verdict." *Id.*

The Federal Rules of Evidence generally prohibit the admission of hearsay. Fed. R. Evid. 802. Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)–(2). "The hearsay rule" is "grounded in the notion that untrustworthy evidence should not be presented to the triers of fact." *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973). Indeed, "[o]ut-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury." *Id.*

However, there are exceptions to the hearsay rule. Relevant here, Rule 803(3) allows for the admission of a statement that describes the declarant's "then-existing state of mind . . . , or emotional, sensory, or physical condition . . . ." Fed. R. Evid.

803(3). And Rule 807, "the residual exception," allows for the admission of a statement that is "supported by sufficient guarantees of trustworthiness" and is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(1)–(2). More specifically, Rule 807 allows the admission of a hearsay statement if it "(1) has 'equivalent circumstantial guarantees of trustworthiness' to statements admitted under the enumerated exceptions, (2) is offered as evidence of a material fact, (3) is more probative on the point offered than any other reasonably available evidence, and (4) will best serve the general purposes of the rules of evidence and the interests of justice." *United States v. End of Horn*, 829 F.3d 681, 685 (8th Cir. 2016).

As a preliminary note, the district court correctly concluded McGrone's statements were hearsay. McGrone's statements were made outside of court and, to the extent McGrone's statements were relevant, Hallmon sought to admit them to prove he did not possess the gun and its ammunition.

Next, the district court did not abuse its discretion in declining to apply Rule 803(3)'s exception. Hallmon has failed to identify specific statements which reflected McGrone's present state of mind. McGrone's statements that she "would've took that charge" and "would've told [LeBaron] that [firearm] was mine" is a substantive reflection about the past, not an expression of present feelings or observations. These statements are not "substantially contemporaneous" with the relevant events, so Rule 803 does not apply. *United States v. Naiden*, 424 F.3d 718, 722 (8th Cir. 2005) (explaining that the present state of mind exception is intended to apply to "immediate reaction[s]," not statements made after the declarant has "ample opportunity to reflect on the situation"). To the extent Hallmon refers to McGrone's statements about their family,[4] McGrone's state of mind is irrelevant. *See Lenza v. Wyrick*, 665 F.2d 804, 810 (8th Cir. 1981) ("[T]he state of mind

---

[4] We carefully reviewed each of the excluded phone calls. In the August 2022 calls, McGrone and Hallmon discussed personal financial and familial hardship. In the February 2023 calls, McGrone and Hallmon discussed custody of their children.

-12-

exception to the hearsay rule allows the admission of extrajudicial statements to show the state of mind of the declarant if that state of mind is *at issue* in the case.") (emphasis added). McGrone's statements about child custody do not make it more or less probable that Hallmon possessed the firearm and ammunition. *Cf. Evans v. Luebbers*, 371 F.3d 438, 444 (8th Cir. 2004) (determining the state of mind exception applied to a victim's former statements that she feared the defendant, who was accused of first-degree murder).

Similarly, the district court did not abuse its discretion by declining to apply Rule 807 because McGrone's statements lacked sufficient indicia of reliability. Rule 807 is intended to apply to "exceptional circumstances where the evidence [is] necessary, highly probative, and carrie[s] a guarantee of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions." *United States v. Thunder Horse*, 370 F.3d 745, 747 (8th Cir. 2004) (quoting *United States v. Renville*, 779 F.2d 430, 439 (8th Cir. 1985)). But, here, McGrone is not a neutral party, and she did not make the statements under oath. *See United States v. Bruguier*, 961 F.3d 1031, 1033 (8th Cir. 2020) (explaining a declarant's statements did not possess "circumstantial guarantees of trustworthiness" because the declarant "was not under oath and there is good reason to doubt a person who knows her romantic partner is accused of committing a serious crime."); *see also United States v. Bobo*, 994 F.2d 524, 528 (8th Cir. 1993) ("[C]ertain close relationships . . . have long been recognized to diminish the trustworthiness of hearsay statements against the declarant's penal interest."). Therefore, the exceptional circumstances warranting application of Rule 807 are not present here.

Last, Hallmon argues the exclusion offended his Fifth Amendment due process rights under the Supreme Court's decision in *Chambers v. Mississippi*. We disagree. In *Chambers*, the Supreme Court "found a due process violation in the combined application of Mississippi's common-law 'voucher rule,' which prevented a party from impeaching its own witness, and its hearsay rule that excluded the testimony of three persons to whom that witness had confessed." *United States v. Scheffer*, 523 U.S. 303, 316 (1998). *Chambers*, however, does not stand for the

proposition that a defendant's due process rights are violated when hearsay evidence is excluded. *See id.*; s*ee also id.* at 308 ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."). Instead, "*Chambers* was an exercise in highly case-specific error correction," *Montana v. Egelhoff*, 518 U.S. 37, 52 (1996), and the Court "specifically confined its holding to the 'facts and circumstances' presented in that case." *Scheffer*, 523 U.S. at 316. We do not find the facts in *Chambers* analogous to those here, so it does not apply. *Cf. Chambers*, 410 U.S. at 300–01 (finding the confessions bore "considerable assurance of their reliability" because they were (1) made close in time to the murder, (2) to the declarant's close acquaintances, (3) corroborated by extrinsic evidence, including eyewitness testimony, and (4) self-incriminatory).

In summary, the district court did not err by excluding the recorded jail calls.

### E.  Obstruction of Justice Enhancement

Fifth, Hallmon challenges the district court's application of a two-level enhancement to his base offense level for obstruction of justice. "We review the district court's interpretation and application of the Sentencing Guidelines de novo, and we review findings of fact for clear error." *United States v. Garcia*, 61 F.4th 628, 631 (8th Cir. 2023) (quoting *United States v. Gomez-Diaz*, 911 F.3d 931, 936 (8th Cir. 2018)).

The Sentencing Guidelines provide for a two-level increase to a defendant's base offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense or conviction . . . ." U.S. Sentencing Guidelines Manual § 3C1.1 (U.S. Sentencing Comm'n 2023) [hereinafter U.S.S.G.]. "A district court may apply the obstruction-of-justice enhancement only if it finds by a preponderance of the evidence that the defendant engaged in obstructive conduct." *Gomez-Diaz*, 911 F.3d at 936. Obstructive conduct includes "threatening intimidating, or otherwise unlawfully influencing . . . a witness . . . , directly or

-14-

indirectly, or attempting to do so" and "committing, suborning, or attempting to suborn perjury . . . ." U.S.S.G. § 3C1.1 cmt. n.4(A)–(B).

The district court found that the two-level obstruction of justice enhancement applied because Hallmon attempted to unlawfully influence McGrone to accept responsibility for the firearm, and Hallmon committed perjury by perpetuating a false narrative about his conversation with his employer.[5] The district court's conclusion was based on an independent evaluation of several phone calls, including those that were not presented to the jury, and Hallmon's testimony. Its findings are sufficient to support an obstruction of justice enhancement by a preponderance of the evidence. *See United States v. Porter*, 140 F.4th 997, 1001 (8th Cir. 2025) (affirming obstruction of justice enhancement where defendant "did not threaten or intimidate anyone with his jail calls," but tried to have a third party "claim the gun").

### F.  Constitutionality of Charge and Conviction

Sixth, Hallmon argues the district court erred by denying his motions to dismiss the indictment and vacate his conviction because § 922(g)(1) is unconstitutional on its face and as applied to him. We review a district court's denial of a motion to dismiss the indictment and constitutional challenges de novo. *See United States v. Robinson*, 140 F.4th 989, 997 (8th Cir. 2025). As Hallmon acknowledges, our precedent forecloses his argument. *See United States v.*

---

[5]At trial, the government introduced a recorded jail call between Hallmon and Turner. In the recording, Hallmon stated he was at the police station on a "PC hold" for "felon in possession" and that the police had his "burner." Hallmon then testified that he intended "burner" to mean cell phone as opposed to firearm. Turner likewise testified that he understood burner to mean cell phone. After reviewing the phone calls and the trial testimony, the district court concluded the testimony was "not credible" and did not make sense unless Turner and Hallmon were talking about a burner gun.

-15-

*Cunningham*, 114 F.4th 671, 675 (8th Cir. 2024); *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024).  We are bound by this precedent.

### III.  Conclusion

For the reasons explained above, we affirm the district court's judgment.

_____